*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0029P (6th Cir.)
File Name: 01a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROBERT CAMPBELL,
     *Plaintiff-Appellant,*

    v.

GRAND TRUNK WESTERN
RAILROAD COMPANY,
     *Defendant-Appellee.*

No. 99-2245

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 98-60351—George C. Steeh, District Judge.

Argued: November 30, 2000

Decided and Filed: January 29, 2001

Before: WELLFORD, SILER, and BATCHELDER,
Circuit Judges.

_____

## COUNSEL

**ARGUED:** Patrick J. Hagerty, GRAY & RITTER, St. Louis, Missouri, for Appellant. Patrick K. Moore, DURKIN, McDONNELL, CLIFTON, DAVIS & O'DONNELL, Detroit, Michigan, for Appellee. **ON BRIEF:** Patrick J. Hagerty, GRAY & RITTER, St. Louis, Missouri, for Appellant. Mary

1

C. O'Donnell, DURKIN, McDONNELL, CLIFTON, DAVIS & O'DONNELL, Detroit, Michigan, for Appellee.

---

## OPINION

---

HARRY W. WELLFORD, Circuit Judge.    Robert E. Campbell has sued his former employer, Grand Trunk Western Railroad Company ("Grand Trunk"), pursuant to the Federal Employers Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA"), for injuries he claimed to have sustained while working as a rail car repairman for Grand Trunk.  The district court granted summary judgment based upon the defendant's argument that Campbell's claim is barred by FELA's three-year statute of limitations.  The district court granted the motion, finding that the facts, when viewed in a light most favorable to Campbell, supported its conclusion that the cause of action began to accrue some time prior to September 4, 1995, three years before the date of filing of the lawsuit.  The district court also denied Campbell's motion for additional discovery and an amended scheduling order.  Campbell filed this appeal in a timely fashion.   We shall **AFFIRM** the decision of the district court.

Plaintiff Campbell worked as a rail car repairman for Grand Trunk in its Port Huron (Michigan) Car Shop from 1970 to 1995.   Between 1990 and 1995, he worked in the "truck gang." His last day of work was October 16, 1995, just weeks before Grand Trunk closed its Port Huron shop, which was sold to PDS Rail Car Services Corporation ("PDS").   The shop reopened in 1996 and PDS hired many of the former Grand Trunk employees, including Campbell.   Campbell continued to perform the same type of work as he did for Grand Trunk.  During the fourteen months between working for Grand Trunk and PDS, Campbell worked for Moretz Carpet Cleaning Service.

On September 4, 1998, Campbell filed the action below pursuant to FELA, claiming personal injuries due to the

in the exercise of reasonable diligence should have known of both the injury and its governing cause."

*Fries*, 909 F.2d at 1095-96, *quoted in Aparicio*, 84 F.3d at 814.

Campbell also appeals the denial of his Rule 56(f) motion for judgment. He concedes, however, that "additional discovery probably would not have changed the court's opinion on the statue of limitations," the dispositive issue we have discussed. Campbell complains, nonetheless, that denial of Campbell's motion was prejudicial to his ability to prosecute his neck and back injury claims. We are not persuaded by Campbell's argument concerning additional discovery, and we conclude that the district court did not abuse its discretion in denying this motion.

Having carefully examined the record, we are satisfied that the district court did not err in holding that Campbell's claim was barred by the statute of limitations. He had a duty to investigate his known physical problem while working for Grand Trunk and reasonably should have known the basis of his problem prior to September, 1998. *See Fries,* 909 F.2d at 1095-96; *see also United States v. Kubrick*, 444 U.S. 111 (1979).

Accordingly, we **AFFIRM** the judgment for Grand Trunk.

negligence of Grand Trunk.[1] Campbell asserted that in October of 1995, he sustained injuries to his back and neck, and that he developed carpel tunnel syndrome ("CTS") while working for Grand Trunk. Campbell was diagnosed with CTS in April of 1998, after allegations of having constantly worked in awkward positions beneath railroad cars and having used a welding torch and sledgehammer. Campbell alleged that Grand Trunk was negligent in failing to provide safe work methods, tools and equipment, adequate assistance, and in requiring employees to work in awkward positions for extended periods of time. Campbell sought substantial damages.

Grand Trunk moved for summary judgment. Prior to the hearing date on the motion, Campbell moved the court to continue the hearing and to issue a new scheduling order for trial and pretrial procedures. He argued that because Grand Trunk had delayed producing witnesses and documents in response to a Rule 30(b)(6) notice, it was premature to decide the summary judgment motion. Also, Campbell requested the court to allow him to take further depositions of his medical providers to address the issue of medical causation, an issue in the controversy.

The district court denied Campbell's motion for a continuance and granted Grand Trunk's motion for summary judgment. The district court held that Campbell's claims based on his CTS were barred by FELA's three-year statute of limitations. *See* 45 U.S.C. § 56 ("No action shall be

---

[1]FELA provides in pertinent part:

Every common carrier by railroad while engaging in [interstate or international] commerce . . . , shall be liable in damages to any person suffering injury [or death] while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the [officers, agents, or employees] of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

maintained under [§ 51 of the FELA] unless commenced within three years from the day the cause of action accrued . . . ."). The district court considered Campbell's deposition testimony that he experienced tingling and pain in his hands on a daily basis when he worked with the power tools at Grand Trunk from 1990 and into later years to be critical. The district court held specifically:

[R]easonable minds could not differ that plaintiff was in possession of critical facts of both his carpal tunnel syndrome injury and the governing cause of the injury in 1994. Plaintiff's deposition testimony establishes that in 1993-1994, plaintiff knew: (1) he was experiencing tingling and numbness on a daily basis, and (2) the tingling and pain was caused by his working with power tools. Plaintiff admitted the tingling and numbness began when he used power tools, and that the sensations subsided about an hour after he stopped using the tools. Possessing these facts, reasonable diligence on plaintiff's part would have led plaintiff to conclude that he had been injured as the result of using [Grand Trunk's] power tools.

In addition, the district court concluded that Campbell had "failed to come forward with a scintilla of evidence that could possibly be construed by a reasonable jury as proving a causal connection between plaintiff's alleged neck injury and [Grand Trunk's] negligence."[2]

The district court also denied Campbell's motion for a new trial or reconsideration. Campbell filed this timely appeal, challenging only the district court's determination with respect to the statute of limitations, and its denial of the motion for a continuance. Campbell does not challenge directly the district court's decision that no evidence

---

[2]The neck injury claim is not before us on this appeal.

due to his Grand Trunk work before the statute of limitations expired.

Rejecting the argument that any aggravation of an injury is a severable cause of action in a Federal Employers' Liability Act case, the district court ruled that "if Plaintiff's carpal tunnel syndrome condition in 1992 was an aggravation of the condition in 1987, then the limitations period would bar the claim." In so holding, the district court rejected the position of the Third Circuit in *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356 (3d Cir. 1996) (holding that a Federal Employers' Liability Act plaintiff may recover for damages for aggravation of his original pulmonary disease/injury if he could prove that the railroad was negligent in permitting him to continue to be exposed to diesel fumes). We agree that an aggravation of an original injury that is claimed to have been caused by an employer's negligence is not a severable action under the Federal Employers' Liability Act.

*Aparicio*, 84 F.3d at 815. Campbell has the additional burden in this respect under *Aparicio* of proving that the railroad was negligent causing him independent and not aggravated injury after September 5, 1995.

The parties also cite *Fries v. Northwestern Transp. Co.*, 909 F.2d 1092 (7th Cir. 1990), which is quoted in *Aparicio*, 84 F.3d at 815:

In *Fries*, the Seventh Circuit observed that the fact that an injury "has not reached its maximum severity . . . but continues to progress" does not relieve the plaintiff of the duty to use reasonable diligence to discover the original injury and its cause. 909 F.2d at 1096.

We also agree with this language in *Fries*:

The Seventh Circuit concluded that "a cause of action accrues for [Federal Employers' Liability Act] statute of limitations purposes when a reasonable person knows or

awakenings through 1998, and that he wasn't even sure at that point if he even had a problem. Also, Campbell stated that prior to March of 1998, any tingling in his arms or hands was "inconsequential." At another point, Campbell was asked if he recalled "when [he] first started to experience tingling when [he was] working with Grand Trunk," and he stated that he did not recall at all. When asked when he first suspected he might have CTS, he responded, "In the '94 to '95 range. I wasn't sure." Campbell reasons that the evidence shows that his memory was "foggy" on the dates of his actual awareness of his injury, but that the 1995 date mentioned in his testimony might put his case within the statute of limitations. The district court erred, he argues, in focusing on the earlier dates because it must construe contradictory evidence in his favor.

Plaintiff saw a physician in 1998 when these same symptoms apparently worsened, and he received physical therapy. The doctor's report stated that his condition "ha[d] been prolonged in nature and worsening" through the years. In March or April of 1998, Campbell was diagnosed with CTS. We believe it was disingenuous to assert, as plaintiff did in his memorandum in opposition to defendant's motion for summary judgment, that "he had no idea" what caused his tingling, numbness, pain and nocturnal awakenings up until 1998.

According to his own admissions, the plaintiff experienced the symptoms of his disorder on a daily basis for several years and reasonably must have recognized the connection with his operation of power tools and equipment furnished and used on his job with Grand Trunk. Unfortunately, he waited for approximately six months to sue after being diagnosed in 1998 with CTS. Both parties cite a somewhat comparable case, *Aparicio v. Norfolk & Western Ry. Co.*, 84 F.3d 803 (6th Cir. 1996), to support their arguments. Among other things, *Aparicio* teaches that if Campbell's condition after September 4, 1995, was an aggravation of his illness prior to that time, his claim would be time-barred if he reasonably should have known that he was suffering from that condition

supported his claim that Grand Trunk negligently caused his neck injury.[3]

We review the district court's grant of summary judgment *de novo*, viewing all the evidence and inferences therefrom in a light most favorable to the nonmoving party. *See Mounts v. Grand Trunk W. R.R.*, 198 F.3d 578, 580 (6th Cir. 2000). The moving party must show the absence of a genuine issue of material fact, and the nonmoving party must then come forward with specific facts showing that there is a genuine issue for trial. *Id.* The nonmoving party may not rest on the mere allegations in the pleadings. *Id.* Where, as in this case, summary judgment was granted on statute-of-limitations grounds, we must determine whether (1) the statute of limitations has run and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued. *See Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1094 (7th Cir. 1990). Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run. If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations. *See Drazan v. United States*, 762 F.2d 56, 60 (7th Cir. 1985).

The parties agree that the applicable period under the FELA standard is a three-year statute of limitations. The parties also agree that the application of the so-called "discovery" rule will determine the actual accrual date of Campbell's claim. Under that rule, the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his *injury* and the *cause*

---

[3]In his reply brief, Campbell claims that "it is incorrect to say that plaintiff is not challenging the Court's ruling on his back injury claim," because he argues that the additional discovery would have borne directly on Grand Trunk's negligence and, thus, could have saved that claim from summary judgment disposition. Campbell did not challenge the court's ruling, however, with respect to his neck/back claim on the evidence submitted before the court.

of that injury. *See Mounts*, 198 F.3d at 581; *Aparicio v. Norfolk & Western Ry. Co.*, 84 F.3d 803, 814 (6th Cir. 1996) (following the holding in *Fries*, 909 F.2d at 1095-96); *see also United States v. Kubrick*, 444 U.S. 111, 122 (1979) (solidifying the discovery rule in a case brought under the Federal Tort Claims Act).

Campbell argues that the district court committed reversible error in failing to construe the evidence in his favor at the summary judgment stage. He claims, rather, that the district court seized on the testimony that supported Grand Trunk's claim.

The following colloquy between Campbell and counsel is pertinent to this inquiry:

Q.   What symptoms did you experience when you worked at Grand Trunk?

A.   (By Campbell) I experienced the tingling and some pain.

Q.   How often would you experience tingling when you worked at Grand Trunk?

A.   *Working with power tools, it was daily.*

Q.   Is that the only time you experienced tingling is when you worked with the power tools?

A.   Yes, daily.

Q.   Would the tingling subside after you stopped using the power tools?

A.   Yes, after a period it was.

Q.   After about an hour or so?

A.   Yes. . . .

Q.   *Can you give me the best estimate when that started?*

A.   *Probably in - probably in the mid 90's, '93, '94.*

Q.   So in approximately the mid '90's, '93 or '94 is the first time that you'd go home from work and the tingling would start up again. Is that a fair statement?

A.   I would call it more of a numbness.

Q.   Has that numbness ever awakened you from your sleep?

A.   Yes.

Q.   When was the first time that you have been awakened from your sleep with numbness?

A.   Oh, it would happen just periodically, maybe once a week or so in that time frame, *in the mid '90's there, '94, '95.*

Q.   So in about 1994 or 1995, you'd be awakened out of your sleep about one time a week with numbness in your hands?

A.   In my arms. They'd be asleep.

(Emphasis added.) The district court reasoned, from all the proof, including Campbell's testimony, that at least by 1994, Campbell knew that (1) he was experiencing tingling and numbness on a daily basis, and (2) the tingling and pain was caused by his working with power tools. The court concluded that "[p]ossessing these facts, reasonable diligence on plaintiff's part would have led plaintiff to conclude that he had been injured as the result of using [Grand Trunk's] power tools."

The district court's emphasis on this testimony, Campbell argues, ignores the other evidence indicating that Campbell was not really sure when his tingling and numbness began. He cites to other parts of his own testimony where he stated that he had never undergone treatment for his nocturnal