much-aggravated hearing impairment. This court affirmed the district court's grant of summary judgment based on the statute of limitations, concluding that Mounts had failed to raise a genuine issue as to whether the hearing loss he first became aware of in 1989 was a separate injury from the aggravated hearing loss he experienced immediately prior to his lawsuit in 1998.

In contrast, this court reversed the grant of summary judgment in *Caputo v. CSX Transp., Inc.*, No. 94-4023, 1995 WL 699622 (6th Cir. Nov. 27, 1995) (unpublished table decision), when another lifelong railroad worker who had been exposed to loud noise for thirty years sued under the FELA for damages flowing from his eventual hearing loss. Although Caputo had been exposed to "excessively high noise levels" for decades, he, unlike Mounts, was told at periodic health exams that his hearing was normal. Caputo was not aware of any cumulative effects of the exposure to such noise until 1990, within three years of his filing suit. This court, in reversing the district court's grant of summary judgment, held that a material factual dispute existed as to the date when the cumulative hearing impairment manifested itself, based on both Caputo's testimony and the testimony of a medical expert. Although the plaintiff in *Caputo*, unlike Fonseca, produced medical testimony to help rebut the defendant's motion, this does not alter the fact that Conrail failed to carry its burden in establishing as a matter of law that the statute of limitations has run.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district court's grant of summary judgment and **REMAND** the case back to the district court for further proceedings consistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0097P (6th Cir.)
File Name:  01a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CARLOS FONSECA,
    *Plaintiff-Appellant,*

    *v.*                                          No. 00-3180

CONSOLIDATED RAIL
CORPORATION,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 99-07159—James G. Carr, District Judge.

Argued:  February 2, 2001

Decided and Filed:  April 4, 2001

Before:  DAUGHTREY and GILMAN, Circuit Judges;
COLLIER, District Judge.*

_____

### COUNSEL

**ARGUED:**    E. J. Leizerman, E.J. LEIZERMAN & ASSOCIATES, Toledo, Ohio, for Appellant.  Kevin C. Alexandersen, GALLAGHER, SHARP, FULTON &

---

*The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

NORMAN, Cleveland, Ohio, for Appellee. **ON BRIEF:** E. J. Leizerman, E.J. LEIZERMAN & ASSOCIATES, Toledo, Ohio, for Appellant.   Kevin C. Alexandersen, Gary F. Werner, GALLAGHER, SHARP, FULTON & NORMAN, Cleveland, Ohio, for Appellee.

_____

### OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  Carlos Fonseca, who developed carpal tunnel syndrome (CTS) as a result of his employment as a railroad laborer with Consolidated Rail Corporation (Conrail), sued his former employer for damages under the Federal Employers' Liability Act (FELA).  Conrail filed a motion for summary judgment, arguing that the statute of limitations had run on Fonseca's claim.  The district court granted the motion, a ruling that Fonseca now challenges on appeal.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

### I.  BACKGROUND

#### A.  Factual background

Carlos Fonseca, a resident of Toledo, Ohio, began working for the railroad in the early 1950s as a laborer.  Fonseca's job was railroad maintenance, which involved changing railroad ties, moving rails, and performing other repairs.  Because Fonseca was a seasonal employee, he only worked for about eighteen months over a period of four years.  Fonseca left the railroad in the mid-1950s, moved to Texas, and worked for an oil mill.  He returned to his employment with the railroad in 1967 as a full-time, year-round laborer, a job he kept until 1997.  His duties were the same as before, consisting of track maintenance, rail repair, switch repair, and other manual tasks.

The court in *Fleming*, based on the above testimony, concluded as a matter of law that his claim was barred by the FELA statute of limitations.  *See also Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 776 (6th Cir. 2001) (6th Cir. Jan. 29, 2001) ("[I]f Campbell's condition . . . [within three years of his complaint] was an aggravation of his illness prior to that time, his claim would be time-barred if he reasonably should have known that he was suffering from that condition due to his Grand Trunk work before the statute of limitations expired.").  In contrast to *Fleming* and *Campbell*, there is nothing in Fonseca's testimony that allows us to conclude as a matter of law that a similar accumulation of the daily stresses of manual labor manifested themselves more than three years before he filed his complaint.

According to Conrail's argument, if the injuries that developed in 1996 or 1997 are simply aggravations of Fonseca's earlier discomfort,  then he would have satisfied the statute of limitations only if he had filed suit by 1970, within three years of his first ache or pain.  Such a result would undermine the purpose of the discovery rule. *See Urie v. Thompson*, 337 U.S. 163, 169 (1949) (declaring that the application of a similar rule to victims of silicosis would make it "clear that the federal legislation afforded Urie only a delusive remedy").  Moreover, if Fonseca had filed a FELA suit in 1970, without any medical evidence beyond his transient aches and pains after a long day's work, the railroad would likely have claimed that the action lacked any evidentiary support.

This court's prior decisions applying the FELA statute of limitations to cases of hearing loss supports the distinction between *Fleming* and *Campbell*, on the one hand, and Fonseca's cause of action, on the other.  In *Mounts v. Grand Trunk W. R.R.,* 198 F.3d 578 (6th Cir. 2000), the plaintiff, a lifelong railroad employee who had been exposed to constant loud noise throughout his career, was given a hearing test in 1989.  He was notified that he had experienced a degree of permanent hearing loss.  Mounts, however, did not sue until 1998, after he was placed on disability leave because of his

"accumulated effects" he claims to have discovered within three years of filing his complaint. Nothing in Conrail's evidence contradicts this testimony. Conrail thus failed to satisfy its burden of showing the absence of a material factual dispute with regard to the statute of limitations. Although Conrail characterizes the later continuous pain as a mere aggravation of Fonseca's prior discomfort, *Urie* and *Aparicio* instruct us to view the "accumulated effects" as a distinct injury unless the evidence suggests otherwise.

The district court incorrectly relied on this court's unpublished opinion in *Fleming v. Consolidated Rail Corp.*, No. 97-4107, 1998 WL 808206 (6th Cir. Nov. 16, 1998) (unpublished table decision), in granting summary judgment. As an initial matter, the district court mistakenly ruled that "[t]hough unreported, I conclude that the court's opinion in *Fleming* is controlling, and requires that summary judgment be granted in the defendant's favor." *Fonseca v. Consolidated Rail Corp.*, No. 99-07159, 2000 WL 246581, at *2 (N.D. Ohio Jan. 20, 2000). Contrary to this assertion, unpublished opinions are never controlling authority. *See* 6th Cir. R. 28(g); *Salamalekis v. Commissioner of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir. 2000).

The district court also erred in concluding that "[t]he facts in *Fleming* are indistinguishable from the facts in this case." Instead, *Fleming* is more like *Campbell* than it is like the case at bar. The plaintiff in *Fleming*, like Fonseca, sought damages under the FELA for CTS incurred as a result of working for years as a railroad track laborer. But unlike Fonseca, the testimony of Fleming quoted in the opinion indicates that he began to experience the continuous pain, as opposed to intermittent discomfort, more than three years before the filing of his complaint. *Fleming*, 1998 WL 808206 at *2-*3 ("Q: So the work you were performing back in the '80s was causing you to have the symptoms that you are telling me about in your hands the numbness and pins? A: Yes, sir, most definitely. Q: Those symptoms continued all the way through when you ended your career with Conrail, correct? A: Yes, sir.").

Throughout Fonseca's employment with the railroad, he used hand tools such as tongs, sledge-hammers, spike-mauls, picks, and shovels. He also used power tools such as air-hammers, air-guns, and rail-saws. According to Fonseca's deposition testimony, his hands would hurt after using many of these tools, but the pain would always subside by the next day. This repetitive but temporary discomfort was a frequent consequence of his employment until 1996 or 1997. Fonseca claims that the pain in his hands did not increase between 1967 and the mid-1990s.

Although the exact date is not clear from Fonseca's deposition testimony, he developed persistent pain in his hands sometime between 1996 and 1997. Unlike before, the pain would not go away the next day. The earliest indication in the record of any awareness by Fonseca of this intensified pain was a medical record from March of 1996, when his doctor wrote: "right hand discomfort second and third digits, did not recall history of hand trauma." Fonseca cannot remember saying anything to his doctor about these pains, but does not dispute that he probably provided the information upon which the notation is based. Dr. Spinelli, Fonseca's doctor, did not offer a diagnosis or treat the pain.

In March of 1997, Fonseca underwent quintuple bypass surgery, forcing him to retire from the railroad. During a conversation with an acquaintance later that year, the subject of Fonseca's persistent hand pain came up. The acquaintance suggested that Fonseca seek medical help for the pain and recommended a doctor. In December of 1997, Fonseca took that advice and was diagnosed with CTS.

## B.   Procedural background

On March 29, 1999, Fonseca filed suit against Conrail in the United States District Court for the Northern District of Ohio. His cause of action sought damages under the FELA as a result of his CTS. *See* 45 U.S.C. § 51-60. Conrail filed a motion for summary judgment on November 1, 1999, arguing that Fonseca's cause of action was barred by the three-year FELA statute of limitations. The only evidence presented in

support of the motion was the deposition of Fonseca taken by Conrail. Fonseca produced no evidence in opposition to the motion, but instead relied on the same deposition testimony. The district court granted the motion on January 20, 2000. In this appeal, Fonseca argues that the district court erred in granting summary judgment against him on his FELA claim.

## II. ANALYSIS

### A.  Standard of review

We review de novo the district court's grant of summary judgment. *See*, *e.g.*, *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B.  The district court erred in granting Conrail's motion for summary judgment based on the FELA statute of limitations

The FELA provides a federal cause of action against a railroad by any employee injured or killed as a result of the railroad's negligence. *See* 45 U.S.C. § 51. Although the FELA provides a remedy that parallels common law negligence cases, the statute has been "liberally construed . . . to further Congress' remedial goal" of holding railroads responsible for the physical dangers to which their employees are exposed. *See Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) (citing previous FELA cases that relaxed the standard of causation required, expanded the

("[T]he inquiry . . . is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

Both parties argue in their briefs about whose burden it was to proffer relevant medical evidence supporting or disputing the separateness of Fonseca's daily discomforts and later continuous pain. Although such evidence would have been helpful, it was not required as a matter of law. A party who moves for summary judgment "bears the initial burden of showing the absence of a genuine issue of material fact." *Johnson v. United States Postal Serv.*, 64 F.3d 233, 236 (6th Cir. 1995). Furthermore, Conrail has the burden of proof on all affirmative defenses, such as the statute of limitations. *See Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."). Thus, if Conrail failed to meet its burden of proof, Fonseca had no obligation to proffer any additional evidence in order to rebut the statute of limitations defense.

Conrail's evidence consisted solely of Fonseca's deposition testimony. Fonseca's testimony, however, suggests that the two injuries are distinct. He was unequivocal in his testimony that the frequent discomfort that he experienced for three decades was not continuous and would always subside by the following morning. Fonseca was asked if the pain and discomfort ever increased at any point prior to 1996 or 1997. His response was "[n]o, it was the same." Fonseca also testified to the following: "[W]hen I worked a lot I feel my hands hurt, but the next day it was gone. But around that time, about - when was that I started? When I got to feel my hands hurting it was about three years ago or two years ago."

These statements suggest that the frequent discomfort that Fonseca experienced as a laborer are a distinct injury from the

Turning to the facts in the present case, we conclude that Fonseca's cause of action accrued upon the later of two key time points. One time point was when the accumulated injury from his daily labors became or should have become apparent to Fonseca. For Fonseca's claim to survive the FELA statute of limitations, he must establish that the frequent but temporary pain he experienced for 27 years was distinct from the cumulative injury that resulted in continuous discomfort thereafter. *See Aparicio*, 84 F.3d at 815 (affirming the conclusion of the district court that a material factual issue existed as to whether the hand discomfort that first manifested itself in 1992 was "separate from his 1987 injury"). The other time point was the moment when Fonseca "[knew] or in the exercise of reasonable diligence should have known . . . [of the injury's] governing cause." *Fries*, 909 F.2d at 1095. In sum, Fonseca's cause of action accrued under the discovery rule when he first knew, or in the exercise of reasonable diligence should have known, of both the injury and its cause. *See Hicks*, 826 F.2d at 1544 (stating that the discovery rule commences the limitations period on "the date by which the plaintiff reasonably should have discovered both cause and injury").

Applying these rules to Fonseca's cause of action, we must decide if a genuine issue of material fact exists as to whether the symptoms that Fonseca complained of within 3 years of his lawsuit is a separate injury from the symptoms that he experienced for the preceding 27 years. If, as Conrail argues, the continuous pain Fonseca experienced beginning in 1996 or 1997 was simply an aggravation of the prior decades of temporary discomfort, then Fonseca's claim is time-barred under *Aparicio* and *Campbell*. On the other hand, if the continuous pain and numbness that developed in the mid-1990s is a distinct injury from the normal discomforts of a day's work, as argued by Fonseca, then his cause of action may survive the statute of limitations defense. We need not decide which characterization of the injury is accurate; rather, we must simply determine whether the evidence is sufficient for a reasonable juror to find in favor of Fonseca. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)

doctrine of negligence per se beyond that covered by the common law rule, and permitted recovery for latent occupational diseases).

Despite its "humanitarian purposes," Congress placed certain limitations on recovery under the FELA. *See Gottshall*, 512 U.S. at 543 ("That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute."). One such restriction on liability is its three-year statute of limitations. *See* 45 U.S.C. § 56 ("No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.").

Although "accrual" of a cause of action, for the purposes of a statute of limitations, generally takes place "when there has been a violation of legally protected interests," or "when the tortious event is committed," some injuries and causes are so latent as to elude discovery at the time of the injury-causing event. *See Hicks v. Hines Inc.*, 826 F.2d 1543, 1544 (6th Cir. 1987) (citing the Restatement (Second) of Torts § 899 cmts. c & e (1977)). Thus, in order to determine when an injury accrues under the FELA's statute of limitations, one of two rules applies: the time-of-event rule, or the discovery rule. *Id*.

Under the time-of-event rule, a cause of action is considered to have accrued the moment a tortious act occurs "[i]f greater than de minimus harm is discernable at the time of the tortious event." *Id*. The time-of-event rule applies to situations in which a traumatic event occurs, resulting in a noticeable injury, even if the full manifestation of the harm remains latent. *See, e.g., Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 231 (5th Cir. 1984) (applying the time-of-event accrual rule to a plaintiff who was exposed to caustic chemicals that initially caused him to lose consciousness and undergo medical treatment, but did not result in severe psychological and physical disorders until a decade later).

In contrast to the time-of-event rule, the discovery rule is applied when no significant injury is discernable at the time of the tortious event, or if the cause of an injury is not

apparent. *See Hicks*, 826 F.2d at 1544. Under the discovery rule, a cause of action is deemed to have accrued when "the plaintiff reasonably should have discovered both cause and injury." *Id*. A prototypical discovery-rule case is one in which an occupational disease remains dormant long after a plaintiff is exposed to the causes of the injury. *See Albertson*, 749 F.2d at 230.

The Supreme Court first applied the discovery rule to a FELA case in *Urie v. Thompson*, 337 U.S. 163 (1949), where a railroad employee contracted silicosis years after exposure to the silica dust that caused the pulmonary disease. Because the plaintiff was not aware of the damage being caused as a result of the prolonged exposure to the dust, the Court applied the discovery rule in order to determine when the cause of action accrued for the purposes of the three-year statute of limitations. *See Urie*, 337 U.S. at 170-71. The Court ruled that, for such latent occupational diseases, "the afflicted employee can be held to be injured only when the accumulated effects of the deleterious substance manifest themselves." *Id*. at 170. Furthermore, the Court refused to characterize each inhalation of the silica dust as a separate injury. *Id*. Rather, the injury at issue was not each breath of silica dust, but the "accumulated effect" of all those dust-filled inhalations. *Id*.

This court has previously applied the discovery rule as described in *Urie* to a cause of action similar to Fonseca's. *See Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803 (6th Cir. 1996), *abrogated on other grounds*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). In *Aparicio*, a railroad-track maintenance laborer developed persistent discomfort in his right hand in 1987, eleven years after the beginning of his work for the railroad. After "conservative treatment . . . the symptoms resolved themselves," and Aparicio went back to work after a month and a half. *Aparicio*, 84 F.3d at 806. Nevertheless, five years later, in 1992, Aparicio developed pain in his hands and was diagnosed with CTS. Aparicio sued the railroad under the FELA the next year, alleging that the railroad's negligence

caused his CTS. The district court granted the railroad partial summary judgment on Aparicio's claim for the injury to his right hand that was initially discovered and treated in 1987. *Id*. at 806. Summary judgment was denied, however, on the remaining claim, and "[t]he case proceeded to trial on the theory that Aparicio could recover if the jury found that his 1992 injuries were separate from his 1987 injury to his right hand." *Id*.

This court affirmed the dismissal of Aparicio's cause of action regarding the 1987 injury on the basis that it was time-barred. *Id*. at 814. The district court's denial of summary judgment as to the 1992 injuries was also affirmed, however, "because Aparicio created a disputed issue of fact as to whether his 1992 injuries were a separate injury or a continuation of his 1987 injury." *Id*. at 815. According to *Aparicio*, if the 1992 injury had simply been an aggravation of the 1987 hand discomfort, the claim would have been time-barred under 45 U.S.C. § 56. *Id*. (citing *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092 (7th Cir. 1990)). In contrast, "[i]f Aparicio's [1992] injuries are a separate injury, then Aparicio's claim is not time-barred." *Id*.

This court's recent opinion in another FELA/CTS case, *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772 (6th Cir. 2001), further illustrates *Aparicio*'s distinction between the aggravation of a time-barred injury and a claim that is distinct from previous injuries. The plaintiff in *Campbell*, a railcar repair worker, began to experience pain, tingling, and numbness in his hands during the 1994-1995 time frame that was so severe as to awaken him from his sleep. Prior to these episodes, Campbell had not experienced any pain in his 25 years as a railroad employee. *Id.* at 775. Campbell nevertheless waited until 1998 to see a physician, when the pain in his hands had worsened. Applying the rule in *Aparicio*, this court held that Campbell's FELA claim was time-barred because no reasonable jury could find that the injury in question was other than an aggravation of the same injury that had developed prior to the fall of 1995, outside of the limitations period.