**William S. MIX, Plaintiff–Appellant,**

v.

**DELAWARE AND HUDSON RAILWAY COMPANY, INC., d/b/a CP Rail System, Defendant–Appellee.**

**Docket No. 02–9200.**

United States Court of Appeals, Second Circuit.

Argued: June 23, 2003.

Decided: Sept. 23, 2003.

84

Gerard J. Martillotti, Davis & Martillotti, P.C. (Stephanie A. Gahagan, on the brief), Philadelphia, PA for Plaintiff–Appellant.

Scott A. Barbour, McNamee, Lochner, Titus & Williams, P.C. (Francis J. Smith, on the brief), Albany, N.Y. for Defendant–Appellee.

Before: WALKER, Chief Judge, and STRAUB and POOLER, Circuit Judges.

POOLER, Circuit Judge.

On June 28, 2000, William S. Mix ("Mix") filed an action against his employer, the Delaware and Hudson Railway Company, Inc., d/b/a CP Rail System ("D & H Railway"), pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, for hearing loss he allegedly suffered during the course of his employment, between September 1973 and April 2000. The United States District Court for the Northern District of New York (Norman A. Mordue, *District Judge*) granted summary judgment to D & H Railway on the basis that Mix's suit was barred by the statute of limitations. Specifically, the district court found that Mix knew, or should have known, of his hearing loss and its cause prior to June 28, 1997, the earliest date upon which his cause of action could have accrued to fall within the three-year statute of limitations period. The district court also held that the continuing tort doctrine does not toll the statute of limitations in FELA cases. Mix now appeals that judgment.

## BACKGROUND

Between September 1973 and April 2000, Mix worked for D & H Railway at various railway yards as a laborer, trainer,

qualified conductor, and engineer. In November 1993, Mix consulted an otolaryngologist, Dr. Leonard Newton, concerning "ringing" in his ears. Mix concedes that, according to Dr. Newton's notes, he "complained of reduced hearing for some period of time and that it was especially notable in high pitches during the past 2–3 years." Mix also concedes that Dr. Newton's notes reported "a chronic problem with tinnitus, or ringing in his ears, which was occurring 95% of the time." Finally, Mix concedes that "the history notes that [he] was exposed to loud noises for years as the result of his employment with the railroad." During his deposition, Mix testified that he initially noticed the ringing and said, "[a]fter that my hearing just progressively got worse to the point where I'm at today." In response to the question, "At [the] time [you consulted Dr. Newton] did you have some belief that the ringing in your ear[s] and any problems you were having were related to your work?," Mix answered, "I'm going to say yes, it just kept getting worse." Moreover, Mix testified that Dr. Newton told him that he had a hearing problem.

In August 1994, Mix completed a medical history questionnaire when he renewed his engineer's license. In response to the question, "Have you ever worked on a noisy job?," Mix checked the "Yes" box and wrote "22 years [with the] Railway." In response to the question, "Have you ever been told or noticed you are hard of hearing?," Mix checked the "Yes" box and wrote "Both." [1] In response to the question, "Do you have any ringing or buzzing in your ears?," Mix checked the "Yes" box and wrote "Constant." During his deposition, Mix testified that when he wrote that he was hard of hearing, he meant that he

was constantly having trouble understanding his wife. However, he testified that his answer on the application was an accurate statement. He also testified that his wife told him "all the time" that he was having trouble hearing.

Between 1993 and 2000, Mix underwent annual hearing exams administered by both his employer and the State of New York. Mix testified that he generally did not receive the results of these hearing tests. In 1997, D & H Railway's representative called Mix to inform him that he had failed the hearing test. However, the representative subsequently called him back to inform him that her prior call was a mistake and that he should "forget that she had even called." Mix testified during his deposition that at the time of this call, he "was having the ringing, having a problem hearing," which progressively worsened. Mix continued to work for D & H Railway until April 2000, when he failed his most recent hearing exam and was dismissed from his position.

Mix filed the instant suit June 28, 2000, pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"). Mix alleged that his hearing loss was caused by his exposure to noisy working conditions and that D & H Railway did not provide him with a reasonably safe working environment. Mix alleged that although D & H Railway required employees to wear earplugs in certain noisy areas, D & H Railway should have instructed employees to wear earplugs throughout the entire railroad yard. Mix alleged that D & H Railway failed to make earplugs available at all times during his employment and that he complained to management when they were not available. Mix also alleged that he suffered hearing

---

1. Although this document states that Mix suffered from "moderate hearing loss," Mix did not write this comment. It is unclear whether he ever saw the comment or learned of the diagnosis.

damage, despite the fact that he generally wore ear protection while working as an engineer.

The United States District Court for the Northern District of New York (Norman A. Mordue, *District Judge* ) granted summary judgment to D & H Railway on the basis that Mix's suit was barred by the statute of limitations. Specifically, the district court found that Mix knew, or should have known, of his hearing loss and its cause prior to June 28, 1997, the earliest date upon which his cause of action could have accrued to fall within the three-year statute of limitations period. The district court also held that the continuing tort doctrine does not toll the statute of limitations in FELA cases. Mix now appeals that judgment.

## LEGAL STANDARDS

■ The Federal Employers' Liability Act provides that "[n]o action shall be maintained ... unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. With respect to "gradual injuries"—those which occur gradually, over long periods of time, due to ongoing exposure to harmful working conditions—the Supreme Court has adopted a "discovery rule" and held that the FELA statute of limitations accrues when the injury "manifest[s]" itself, taking into account whether the plaintiff "should have known" of his injury. *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). The Court subsequently applied this discovery rule to claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 ("FTCA"), holding that a tort claim does not accrue until the plaintiff discovers both his injury and its cause, but that accrual does not await awareness by the plaintiff that his injury was negligently inflicted. *See United States v. Kubrick,* 444 U.S. 111, 120–25,

100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Although this discovery rule was refined in the context of FTCA cases, the genesis of the rule can be traced to *Urie* and courts apply it to FELA cases. *See, e.g., Campbell v. Grand Trunk W. R.R. Co.,* 238 F.3d 772, 775 (6th Cir.2001); *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092, 1095–96 (7th Cir.1990); *Albert v. Maine Cent. R.R. Co.,* 905 F.2d 541, 543–44 (1st Cir.1990); *Townley v. Norfolk & W. R.R. Co.,* 887 F.2d 498, 500–01 (4th Cir.1989); *DuBose v. Kansas City S. Ry. Co.,* 729 F.2d 1026, 1029–30 (5th Cir.1984). Thus, an FELA action accrues when "the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury." *Ulrich v. Veterans Admin. Hosp.,* 853 F.2d 1078, 1080 (2d Cir.1988) (citing *Kubrick,* 444 U.S. at 122–25, 100 S.Ct. 352).

## DISCUSSION

### I. Mix's Injuries Prior to June 28, 1997

■ We affirm the district court's decision to grant summary judgment to D & H Railway, to the extent that Mix's claim seeks to recover for injuries he suffered prior to June 28, 1997. The undisputed facts establish that Mix knew, or should have known, of the existence of his injury prior to that date. Mix consulted Dr. Newton in November 1993, and he concedes that the doctor's notes indicate that he "complained of reduced hearing for some period of time." Less than one year later, Mix completed an application to renew his engineer's license. In response to the question, "Have you ever been told or noticed you are hard of hearing?," Mix checked the "Yes" box and wrote "Both." During his deposition, Mix testified that he initially noticed ringing in his ears, prompting his visit to Dr. Newton in 1993, after which his "hearing just progressively got worse."

Mix argues that he consulted Dr. Newton for a distinct injury. Specifically, he argues that "[t]he problems with tinnitus and hearing loss are separate and distinct medical conditions." Even accepting the purported distinction between tinnitus and hearing loss, the record reflects that Mix complained of "hearing loss" prior to June 28, 1997. Specifically, he complained of "reduced hearing" to Dr. Newton in 1993 and admitted to being "hard of hearing" in 1994. He also testified that his hearing "progressively got worse" after his initial visit to Dr. Newton.

Mix also argues that he provided contradictory testimony concerning when he had notice of his hearing loss. He cites only one portion of his deposition transcript in which he said the following:

Q. Do you remember telling the healthcare provider back in 1994 that you had been told that you were hard of hearing or that you've noticed being hard of hearing?

A. Yes, my wife tells me all the time.

Q. What about back in 1994, were you aware of it then?

A. Somewhat, not to the extent that it is right now.

Q. When you say, "somewhat," you had noticed that you were hard of hearing back in 1994?

A. This is—how can I put this? This is like my wife, she's constantly saying things to me and I misunderstand what she's saying.

However, none of this testimony contradicts evidence that Mix knew, or should have known, of his hearing loss prior to June 28, 1997. Rather, it supports the district court's conclusion on this issue. Mix admitted that his wife told him as early as 1994 that he was "hard of hearing." Mix also admitted that, as early as 1994, he was "somewhat" aware of his hearing loss.

Finally, Mix argues that "[t]he record of that office visit makes no mention whether hearing loss was objectively diagnosed or that any actual findings were documented." Regardless of whether he received an actual diagnosis, undisputed facts indicate that Mix knew that he was having problems with his hearing. The fact that Mix may not have had actual knowledge of his medical diagnosis would not relieve him of his duty of exercising due diligence based upon strong indications that he did, in fact, have an injury.

There is also no genuine issue of material fact that Mix knew, or should have known, that his hearing loss was caused by noisy conditions at his workplace. Mix testified that at the time he consulted Dr. Newton, he had "some belief" that his hearing problems were related to his work. Specifically, Mix testified as follows:

Q. At that time did you have some belief that the ringing in your ear[s] and any problems you were having were related to your work?

A. I'm going to say yes, it just kept getting worse.

Mix recognized the need to wear earplugs in noisy areas. He testified that the noise levels at the railroad yard were so high that all employees should have been required to wear earplugs in every area. Moreover, he testified that he complained to management when earplugs were not available. Thus, the record is clear that Mix recognized the connection between his noisy working conditions and his hearing loss.

In sum, based upon uncontroverted facts, there can be no dispute that Mix knew, or should have known, of both the existence and cause of his injury prior to June 28, 1997. On this basis, we affirm the district court's decision to grant summary judgment to D & H Railway on

Mix's claim, to the extent that he seeks to recover for injuries he suffered prior to that date.

## II. Mix's Injuries Between June 28, 1997, and June 28, 2000

We now join other circuits in considering whether a plaintiff complaining of a gradual injury may assert a cause of action based upon injuries sustained during the three-year period preceding the filing of his FELA claim. Despite the apparent simplicity of the discovery rule, its application does not necessarily function effectively in the context of gradual injuries. Unlike traumatic injuries, the existence and causes of gradual injuries are often elusive. Whereas a longshoreman whose leg is crushed by a container shipment immediately knows of both the existence and cause of his injury, a white-collar worker who feels slight, intermittent pain in her wrist may not know for many years that she has carpal tunnel syndrome as a result of her working conditions. Even a plaintiff who is aware of the existence and cause of his gradual injury may not have an adequate remedy. A plaintiff, such as Mix, may be faced with the choice of filing suit prematurely, which may preclude a full recovery and could result in him being declared unfit to work, or waiting until the gradual injury becomes serious enough to render him unfit to work, in which case the claim may be barred as untimely. Either result would be inequitable and undermine the spirit of the FELA, which we must interpret broadly to effectuate its remedial purpose. *See, e.g., Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

For these reasons, we decline to join the following circuit decisions to the extent that they can be read as necessarily barring FELA claims based upon injuries suffered during the three-year period of limitations. *See, e.g., White v. Mercury Marine, Div. of Brunswick, Inc.,* 129 F.3d 1428, 1432–33 (11th Cir.1997) (analyzing analogous maritime law's statute of limitations); *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092, 1095 (7th Cir. 1990) (holding that "[t]he tolling permitted by *Urie* only extends the limitations period to the date when the injury manifests itself, not beyond"). *See also Matson v. Burlington N. Santa Fe R.R.,* 240 F.3d 1233, 1235–36 (10th Cir.2001); *Bealer v. Missouri Pac. R.R. Co.,* 951 F.2d 38, 40 (5th Cir.1991) (per curiam); *Albert v. Maine Cent. R.R. Co.,* 905 F.2d 541, 543–44 (1st Cir.1990); *Townley v. Norfolk & W. Ry. Co.,* 887 F.2d 498, 501 (4th Cir. 1989).

■■■ Mix argues that we should toll the statute of limitations based upon the continuing tort doctrine, which provides that, in certain tort cases involving continuous or repeated injuries, the statute of limitations accrues upon the date of the last injury and that the plaintiff may recover for the entire period of the employer's negligence, provided that an act contributing to the claim occurs within the filing period. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). However, applying this doctrine in an FELA case would be inconsistent with the discovery rule, as it would permit plaintiffs to recover for injuries whose existence and cause was known over three years prior to filing suit. The Supreme Court has rejected the notion that "each intake of dusty breath is a fresh 'cause of action.'" *Urie,* 337 U.S. at 170, 69 S.Ct. 1018. Most courts to consider this issue have refused to apply the continuing tort doctrine to FELA cases, and the only court to endorse this approach did so by misinterpreting

*Fowkes v. Pennsylvania R.R. Co.*, 264 F.2d 397 (3d Cir.1959).[2]

■ At oral argument, the parties addressed the applicability of *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), which applied the continuing tort doctrine to hostile work environment claims under Title VII. However, we recognize a distinction between Title VII and the FELA that supports applying the continuing tort doctrine in certain Title VII cases, but not in FELA cases. In Title VII cases, the statute of limitations begins to run when "the alleged unlawful employment practice occur[s]." *Morgan*, 536 U.S. at 109, 122 S.Ct. 2061 (citing 42 U.S.C. § 2000e–5(e)(1) (emphasis omitted)). While "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," the Court recognized that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 114–15, 122 S.Ct. 2061. As "the entire hostile work environment encompasses a single unlawful employment practice," the Court recognized that "an unlawful employment practice has 'occurred,' even if it is still occurring." *Id.* at 117, 122 S.Ct. 2061. For this reason, a plaintiff may assert a hostile work environment claim under Title VII if one predicate act occurs within the filing period, which is consistent with Title VII's requirement that the statute of limitations begins to run once the act has "occurred." However, since all of the predicate acts are part of a single claim, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

Whereas Title VII utilizes an "occurrence-based" trigger for the statute of limitations, the FELA has a "discovery-based" trigger. As discussed, an FELA claim accrues once the plaintiff knows, or should have known, of both the existence and cause of his injury. As the plaintiff's knowledge, in the exercise of due diligence, is dispositive, it is not relevant whether a single incident of tortious conduct occurs within the filing period. Once the plaintiff is aware of his injury and its cause, the mere fact that the tortious conduct—of which he is aware—is ongoing does not provide a basis for tolling or restarting the statute of limitations.[3] Accordingly, we reject the argument that the continuing

---

**2.** In *Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902 (8th Cir.1980), the Eighth Circuit cited *Fowkes* for the proposition that the claim accrues when the tortious conduct ceases, in a case where the plaintiff knew of the existence and cause of his injuries. *Id.* at 908. However, the Third Circuit tolled the statute of limitations in *Fowkes* because "the jury found specifically that the plaintiff was unaware that the physical condition for which he sought damages had existed for more than three years before the suit had been filed." *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 359 (3d Cir.1986). The Third Circuit also recognized that the cause of action accrues once the plaintiff discovers the existence and cause of his injury. *Id.* at 360 ("On discovering an injury and its cause, a claimant must choose to sue or forego that remedy.").

**3.** Mix also relies upon *Page v. United States*, 729 F.2d 818 (D.C.Cir.1984), in which a plaintiff asserted medical malpractice claims against the Veterans Administration, pursuant to the FTCA. The court held that the statute of limitations would not accrue until the tortious conduct ceased. *Id.* at 821–23. However, in *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078 (2d Cir.1988), we held that medical malpractice cases are sufficiently unique to warrant tolling the statute of limitations. "[A] number of courts—including our own—have recognized that where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the FTCA cause of action arose, the statute of limitations may be tolled under certain circumstances until the end of the course of treatment." *Id.* at 1080. The rule exists because: 1) "it is not reasonable to expect a patient who is in the continuing care of a doctor to discover that the

tort doctrine tolls the statute of limitations in FELA cases.

Mix argues that we should adopt the approach of the Third Circuit, which permits a distinct cause of action under the FELA for "aggravation" of an existing, gradual injury that occurs during the three-year period preceding the suit. *See Kichline v. Consolidated Rail Corp.,* 800 F.2d 356, 361 (3d Cir.1986). We reject this approach, to the extent the claim for aggravation is based upon negligence of which the plaintiff was aware over three years before the suit. Were we to allow such a claim for aggravation, a plaintiff could recover for an injury whose existence and cause was known over three years preceding the suit, in contravention of the Supreme Court's holdings in *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) and *United States v. Kubrick,* 444 U.S. 111, 122–25, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

■ Instead, we rely upon the plain language of the discovery rule, which provides that the statute of limitations accrues upon the plaintiff's discovery of *both* his injury and its cause. Accordingly, a plaintiff can recover for injuries suffered during the three-year period preceding the suit, if these injuries are sufficiently distinct from those previously suffered. A plaintiff can also recover for aggravation to existing injuries, provided that the aggravation was caused by a distinct act of negligence whose existence and relationship to the injury was unknown prior to the three-year period preceding the suit.

### A. A Distinct Injury

■ A plaintiff may recover for distinct injuries he suffers during the three-year period preceding the suit. Had Mix prof-

fered sufficient evidence to support his argument that "tinnitus" and "hearing loss" are separate conditions, and that he began to suffer from the latter affliction only during the statute of limitations period, we would have vacated the district court's judgment on this basis. However, the undisputed record is clear that Mix suffered from "hearing loss" as early as 1993.

Regardless, Mix's argument requires us to determine how distinct the two injuries must be—or more aptly, how similar the injuries may be—in order to assert a claim on this basis. In an effort to craft a bright-line rule, we rely upon the Sixth Circuit's holding in *Fonseca v. Consolidated Rail Corp.,* 246 F.3d 585 (6th Cir.2001). In that case, the plaintiff, a railroad laborer who worked with various hand tools between 1967 and 1997, would experience pain in his hands, but the pain always subsided within a day. *Id.* at 587. Sometime between 1996 and 1997, however, the pain became permanent, and the plaintiff filed suit under the FELA. *Id.* The Sixth Circuit distinguished between the "temporary pain" the plaintiff experienced for twenty-seven years and the "cumulative injury" that resulted in permanent, continuous pain, concluding that the "accumulated effects" of exposure to harmful working conditions may comprise an injury distinct from the temporary symptoms he previously experienced. *Id.* at 590–91. "[I]f the continuous pain and numbness that developed in the mid 1990s is a distinct injury from the normal discomforts of a day's work, . . . then [the plaintiff's] cause of action may survive the statute of limitations defense." *Id.* at 590.

■ We adopt the same rule and hold that a plaintiff may maintain a claim for

doctor's acts may be the cause of his injuries," *id.;* and 2) "it [is] absurd to expect a patient being treated by a doctor or hospital to interrupt corrective treatment by institut-

ing suit against either while under their continuing care." *Id.* at 1081. The same rationale does not apply in an FELA case for work-related injuries.

"accumulation" if he proffers evidence suggesting that his initial symptoms were temporary in nature, and based upon their accumulation, became permanent injuries only during the three-year period preceding his suit. In essence, we recognize that temporary injuries may be sufficiently distinct from permanent injuries to preclude summary judgment, as an employee is "injured only when the *accumulated* effects of the [continuing exposure] manifest themselves." *Urie*, 337 U.S. at 170, 69 S.Ct. 1018 (emphasis added) (citations omitted). Thus, Mix can survive summary judgment if he proffers evidence that, prior to June 28, 1997, his tinnitus and hearing loss caused only temporary discomfort as a result of his exposure to noisy working conditions, and that these symptoms did not manifest themselves as a cumulative, permanent injury until the three-year period preceding this action.

### B. A Distinct Cause

■ We also recognize that a plaintiff may assert a claim for "aggravation" of an existing injury, provided there is evidence that the additional damage was caused by a distinct act of negligence of which the plaintiff became aware only during the three-year period preceding his suit. *See Consolidated Rail Corp.*, 512 U.S. at 543, 114 S.Ct. 2396 (recognizing that the basis of the employer's liability under the FELA is his negligence). To hold otherwise would extinguish a claim stemming from an independent act of negligence before it even accrues under the discovery rule, and we cannot view the prior claim as having this effect merely because its predicate act of negligence caused or was aggravated by the same injury as a subsequent, distinct act of negligence. *Cf. Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (recognizing that a previously existing actionable claim or judgment "cannot be given the effect of extinguishing claims which did not even then exist"). Therefore, a plaintiff who alleges that a distinct act of negligence—of which he was not aware over three years before filing suit—aggravated his existing injury may seek to recover for additional damages he allegedly suffered as a result of the intervening cause. In the instant case, however, Mix never argued that his hearing loss stemmed from two distinct causes. D & H Railway's continuing failure to provide ear plugs by itself would not qualify as a "distinct cause." Finally, we emphasize that if there was a distinct cause or injury within the statute of limitations period, the plaintiff may collect damages only for the distinct injury or the degree of the injury resulting from the distinct cause.

### CONCLUSION

Based upon the foregoing, the judgment of the United States District Court for the Northern District of New York is affirmed in part and vacated and remanded in part so that the district court may reconsider the motion in a manner consistent with this opinion and undertake additional fact finding, if necessary.