**BROOKRIDGE APARTMENTS, LTD., Plaintiff/Appellant,**

**v.**

**UNIVERSAL CONSTRUCTORS, INC., Badger–Bogle Architects, P.C., Boyd Bogle III, and George Volak, Defendants/Appellees.**

No. 01A01–9201–CV–00009.

Court of Appeals of Tennessee, Western Section, at Nashville.

Aug. 7, 1992.

Application for Permission to Appeal Denied by Supreme Court Nov. 30, 1992.

William J. Hart, Hermitage, for plaintiff/appellant.

H. Frederick Humbracht, Jr., John E. Brandon, Nashville, for defendant/appellee Universal Constructors, Inc.

Robert C. Evans, Nashville, for defendants/appellees, Badger–Bogle Architects, P.C., Boyd Bogle III and George Volak.

FARMER, Judge.

The plaintiff, Brookridge Apartments, Ltd., (hereinafter "Owner") appeals from the orders of the trial court granting motions for summary judgment in favor of the defendants Universal Constructors, Inc., Badger–Bogle Architects, P.C., Boyd Bogle III, and George Volak.[1] The trial

---

1. At all times relevant hereto, Boyd Bogle III and George Volak were employees of Badger–Bogle Architects, P.C.

Based upon the parties' stipulation that Owner's action against Reliance Insurance Company was not brought within the time specified by the terms of their performance bond, the trial court granted summary judgment in favor of Reliance Insurance Company.

court held that Owner's cause of action, which was based on the defendants' alleged negligent design, construction, and inspection of an apartment complex, was barred by the four-year statute of limitations, codified at T.C.A. § 28–3–202, because the date of substantial completion occurred more than four years prior to Owner's filing of this action. The trial court found that substantial completion occurred prior to August 20, 1986, and Owner did not file the present action until August 20, 1990. Owner filed this action after the August 13, 1990, collapse of two balconies at the apartment complex which resulted in serious injuries to two workmen.

In March, 1985 Owner entered into a contract with the defendant Universal Constructors, Inc., (hereinafter "Contractor") for the construction of a 176–unit apartment complex in Nashville, Tennessee. Owner and Contractor executed a contract on a form provided by the U.S. Department of Housing and Urban Development (hereinafter "HUD") entitled "Construction Contract Cost Plus." Use of the HUD form contract was required in order to obtain federal funding for construction of the project. Relative to the date of substantial completion, the contract provided that the "date of substantial completion shall be the date the HUD Representative signs the final HUD Representative's Trip Report provided that the trip report is subsequently endorsed by the Chief Architect." If the work to be performed under the contract was not substantially completed by June 26, 1986, the contract provided that Contractor's fee would be reduced by $2,901.70 as liquidated damages for each day of delay until the date of substantial completion. The contract further provided that changes in any terms of the contract documents required the prior written approval of Owner's Lender (First American National Bank of Nashville) and the Federal Housing Commissioner. The contract designated the defendant Badger–Bogle Architects, P.C., as the design architect and architect in charge of administering the construction contract.

Also in March, 1988 Owner entered into a contract with the defendant Badger–Bogle Architects, P.C., (hereinafter "Architect") for the preparation of plans and specifications for the apartment complex. Owner and Architect executed a contract on a form provided by the American Institute of Architects entitled "AIA Document B181, Standard Form of Agreement Between Owner and Architect For Housing Services." Relative to the date of substantial completion, the AIA form agreement provided that the "Architect shall conduct inspections to determine the Dates of Substantial Completion and final completion, and shall issue a final Certificate for Payment." The agreement also provided that the HUD "Amendment to AIA Document B181, Appendix 2, 4460.1 REV.CHG" was attached and was a part of the agreement. The HUD amendment provided that the provisions of the amendment would supersede and void all inconsistent provisions of the agreement. Relative to substantial completion, the amendment provided that the "Architect shall issue Certificates of Payment and Certificates of Substantial Completion. These certificates shall be in the form prescribed by HUD/FHA." The amendment also required Owner and Architect to perform all services in accordance with applicable HUD/FHA (Federal Housing Administration) requirements.

In the summer of 1986 the parties executed three separate FHA Forms No. 2485, entitled "Permission to Occupy—Project Mortgages." The HUD form contract between Owner and Contractor required the Federal Housing Commissioner's approval of these forms as a prerequisite to final payment to Contractor. The first FHA Form No. 2485 signed by the parties requested permission to occupy 108 living units, including the two units where the balconies later collapsed. The Request for Permission to Occupy portion was signed by Owner's representative on June 11, 1986, and provided as follows:

Based upon Owner's filing of a notice of voluntary dismissal, the trial court dismissed without prejudice Owner's claims against the defendants Stoll Architects and Donald E. Stoll.

All work in connection therewith has been *substantially completed* and all of the above-described living units are suitable for occupancy, with the fixtures and equipment installed and in operating condition.... The premises have been inspected by the public authorities have [sic] jurisdiction and permission to occupy granted by them as evidenced by the certificates attached hereto.... (emphasis added)

The portion entitled Architect's Certificate of Substantial Completion was signed by Architect's representative on June 11, 1986, and provided as follows:

I have inspected the units listed above and have found construction to be *sufficiently complete and in accordance with contract documents so that owner may occupy the above described living or service units for the uses intended.* I have examined all required certificates of permission to occupy as issued by public authorities having jurisdiction and found same to be in proper order. (emphasis added)

The Contractor's Certification portion was signed by Contractor's representative on June 11, 1986, and provided as follows:

This is to certify that *all work or correction necessary to complete* the above-described living units in accordance with the contract requirements and in a manner acceptable to the Federal Housing Administration *will be performed* without delay and at no additional cost regardless of any adverse conditions resulting from the occupancy of the aforesaid living units. (emphasis added)

On July 3, 1986, a representative of Owner's Lender signed the Mortgagee's Statement portion of the form indicating that the request was acceptable to Lender.

On July 11, 1986, a representative of FHA signed the FHA Inspection Report portion of the form, which indicated that

Examination of the living units described above, including the available means of access thereto, reveals they are *suitable for occupancy*.... (emphasis added)

The Permission to Occupy was subsequently granted by a representative of FHA on July 15, 1986. This portion provided that

Permission is granted for the occupancy of the living units identified on the FHA Inspection Report portion of this form as suitable for occupancy. *It is understood that this does not constitute and shall not be construed as acceptance of construction and that completion of these living units in accordance with the contract documents is essential and will be performed prior to acceptance of the construction.* (emphasis added)

Architect and Contractor submitted the second FHA Form No. 2485 requesting occupancy for 28 additional living units on June 17, 1986. On June 20, 1986, they submitted the third FHA Form No. 2485 requesting permission to occupy the remaining 40 living units in the apartment complex. Both forms were subsequently signed by Owner on August 22, 1986, by Lender on August 25, 1986, and by FHA on August 26, 1986.

In accordance with the agreement between Owner and Contractor, the final HUD Representative's Trip Report was completed on August 21, 1986. Owner filed this action August 20, 1990.

On appeal Owner presents the following issues for review:

1. Whether the trial court erred in finding that the date of substantial completion occurred more than four years prior to the filing of the complaint and that [Owner's] cause of action was barred by T.C.A. § 28-3-202.

2. Whether the trial court erred in refusing to find that the actions of [the defendants] constituted wrongful concealment.

Under T.C.A. § 28-3-202,

All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any

person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

T.C.A. § 28–3–201 defines substantial completion as

that degree of completion of a project, improvement, or a specified area or portion thereof (in accordance with the contract documents, as modified by any change order agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended.

The statute further provides, however, that "the date of substantial completion may be established by written agreement between the contractor and the owner." T.C.A. § 28–3–201(2).

Under T.C.A. § 28–3–205, the statute of limitations is not available as a defense to one who is guilty of fraud in performing or furnishing the design or construction of the project or to one who wrongfully conceals such a cause of action. T.C.A. § 28–3–205(b).

In granting the defendants' motions for summary judgment, the trial court held that the parties never established by written agreement the date of substantial completion. In determining the date of substantial completion, the court declined to look either to the HUD form contract executed by Owner and Contractor or to the FHA Forms No. 2485 executed by the parties requesting permission to occupy certain living units of the project. Instead, the trial court noted that on June 20, 1986, Contractor submitted, and Architect approved, the final draw request. In addition, on August 11, 1986, the Metropolitan Department of Codes Administration issued its certificate of use and occupancy. The trial court found that these events indicated that the "apartment complex, as a whole, was ready for occupancy and use before August 20, 1986."

We have concluded that the trial court erred in holding that the parties never established by written agreement the date of substantial completion. While T.C.A. § 28–3–201(2) sets forth the definition of the term "substantial completion," the statute also allows the contractor and the owner to establish the date of substantial completion by written agreement. In this case, Owner and Contractor established by written agreement that the date of substantial completion would be the date the HUD Representative signed the final HUD Representative's Trip Report. If the parties had not agreed to the date of substantial completion, then we agree that other events, such as the execution of FHA Forms No. 2485 requesting permission to occupy living units of the project, the submission and approval of a final draw request evidencing completion of the project, and the issuance of a certificate of use and occupancy by the local government, would be relevant to the issue of whether substantial completion had occurred as defined by the statute. These events lose their significance, however, where the contractor and the owner have established the date of substantial completion by written agreement.

■ The defendants maintain that these events establish that Owner, Contractor, and Architect later agreed not to adhere to the HUD form contract's definition of substantial completion. As previously indicated, however, the HUD form contract provided that changes in any terms of the contract documents required the prior written approval of Lender and the Federal Housing Commissioner. Neither the final draw request submitted by Contractor and approved by Architect nor the certificate of use and occupancy issued by local authorities met this requirement.

The AIA form agreement likewise did not change the terms of the HUD form contract between Owner and Contractor relative to the date of substantial completion. The AIA form agreement was executed only by Owner and Architect; Contractor was not a party to and did not sign the agreement.

■ The more difficult question is whether the FHA Forms No. 2485 executed by the parties and requesting permission to occupy certain living units of the project served to change the terms of the HUD form contract between Owner and Contractor regarding the date of substantial completion. In signing the requests, Owner and Architect represented that all work in connection therewith had been substantially completed. The forms were approved by Contractor, Lender, and FHA. After careful consideration, however, we have concluded that the parties' execution of these forms, while necessary to comply with the terms of the HUD form contract, was not intended to amend the terms of the contract itself.

Initially, we note that, on its face, FHA Form No. 2485 did not purport to amend the original HUD form contract between Owner and Contractor. The HUD form contract, on the other hand, required the Federal Housing Commissioner's approval of FHA Form(s) No. 2485 as a prerequisite to paying Contractor the balance due under the contract. While the contract clearly contemplated the Commissioner's issuance of FHA Form No. 2485 after completion of the work thereunder, the contract did not indicate that FHA Form No. 2485 was to be used to measure the date of substantial completion. Instead, the contract designated the final HUD Representative's Trip Report as the measuring document.

Further, we hesitate even to characterize the parties' signing of FHA Form No. 2485 as constituting an agreement between Owner and Contractor regarding substantial completion. Rather, the form was divided into several portions, each of which required a different party involved in the project to attest to that party's knowledge of a specific segment or aspect of the project's progress. Although both Owner and Architect certified that the described living units had been substantially completed, Contractor's portion contained no reference to substantial completion. Instead, Contractor certified that "all work or correction *necessary to complete* the above-described living units in accordance with the contract requirements and in a manner acceptable to [FHA would] be performed without delay and at no additional cost" (emphasis added).

This interpretation is supported by the notation at the bottom of FHA Form No. 2485 that FHA's granting of permission for occupancy did "not constitute ... acceptance of construction and that completion of [the] living units in accordance with the contract documents [was] essential ... to acceptance of the construction." Apparently, the parties continued to adhere to the HUD form contract's provisions regarding the date of substantial completion because, as a result of failing to complete the project by June 26, 1986, Contractor was ultimately responsible for liquidated damages in the amount of $162,495 based upon a substantial completion date of August 21, 1986, the date of the final HUD Representative's Trip Report.

Finally, we note that this interpretation is not wholly inconsistent with the provisions of the AIA form agreement between Owner and Architect requiring Architect to conduct inspections to determine the dates of substantial completion and to issue certificates of payment and substantial completion "in the form prescribed by HUD/FHA." In any event, T.C.A. § 28–3–201(2) indicates that the critical agreement is that between the owner and the contractor, not the architect.

This Court has the duty to enforce contracts according to their plain terms. *Bob Pearsall Motors v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975). *See also* T.C.A. § 47–50–112 ("All contracts ... shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written"). As previously stated, Owner and Contractor agreed that the date of substantial completion would be the date the HUD Representative signed the final HUD Representative's Trip Report. This event occurred on August 21, 1986. We conclude, therefore, that the trial court erred in holding that T.C.A. § 28–3–202 barred Owner's action filed August 20, 1990. In view of this holding, we find it unnecessary to address

Owner's second issue regarding wrongful concealment.

The judgment of the trial court is reversed and this cause remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellees Universal Constructors, Inc., Badger–Bogle Architects, P.C., Boyd Bogle III, and George Volak in equal shares, for which execution may issue if necessary.

TOMLIN, P.J., W.S., and CRAWFORD, J., concur.