# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 13, 2016 Session

## MR HOTELS, LLC v. LLW ARCHITECTS, INC. ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 13784I    Claudia C. Bonnyman, Chancellor

_____

### No. M2015-00840-COA-R9-CV – Filed July 28, 2016

_____

This interlocutory appeal arises out of the design and construction of a six-story hotel. The owner of the hotel sued LLW Architects, Inc. for breach of contract based on an AIA Standard Form of Agreement Between Owner and Architect. The owner also asserted claims for professional liability against LLW and its principal architect, Dell Livingston, alleging the breach of a duty of care in carrying out their professional services. The trial court summarily dismissed all claims against LLW and Mr. Livingston as time barred by the three-year statute of limitations for damage to real property: Tenn. Code Ann. § 28-3-105. Portions of the hotel first opened for business on May 30, 2007, and the hotel was approved for final use and occupancy on June 26, 2007. Plaintiff commenced this action on October 20, 2010. The owner-architect agreement states that the statutes of limitations for "[c]auses of action between the parties to this Agreement" begin to run on "the date of Substantial Completion." The accrual provision also states that "[i]n no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed." The agreement defines "Substantial Completion" as "the stage of progress of the Work when the Work or designated portion thereof is sufficiently complete . . . so that the Owner can occupy or utilize the Work for its intended use . . . ." The agreement also defines "date of Substantial Completion" as "the date certified by the Architect . . . ." The trial court held that the accrual provisions applied to the individual architect because Plaintiff's claims against him were based on duties specified in the architectural agreement. The trial court also determined that June 1, 2007 was the date of Substantial Completion because the hotel was being used for its intended purpose on that date. We respectfully disagree, having determined that LLW and Mr. Livingston were not entitled to summary judgment because they failed to establish the elements of their affirmative defense based on the statute of limitations. Accordingly, we reverse and remand for further proceedings.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Reversed and Remanded

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Christopher S. Dunn, Mark M. Bell, and Joseph L. Watson, Nashville, Tennessee, for the appellant, MR Hotels, LLC.

Vic L. McConnell, Nashville, Tennessee, for the appellees, LLW Architects, Inc. and Dell Livingston.

**OPINION**

In July 2005, MR Hotels, LLC ("Plaintiff") and LLW Architects, Inc. ("LLW") entered an agreement ("Architecture Agreement") in which LLW agreed "to provide design and contract administration services" for a six-story hotel with a two-level underground parking garage. Dell Livingston, who is a licensed architect and a principal of LLW, signed the agreement on behalf of LLW. Mr. Livingston was also identified in the agreement as LLW's "Designated Representative."

The Architecture Agreement contains a provision that governs the accrual of causes of action. This provision states:

> Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion. In no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed.

The Architecture Agreement requires the Architect to "conduct inspections to determine the date or dates of Substantial Completion and the date of final completion . . . ." The Architecture Agreement also states that "[t]erms in this Agreement shall have the same meaning as those in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement."[1] Document A201 contains definitions for both "date of Substantial Completion" and "Substantial Completion." The "date of Substantial Completion" means "the date certified by the Architect in accordance with Section 9.8 [of Document A201]." Section 9.8 defines "Substantial Completion" as:

---

[1] AIA stands for "American Institute of Architects."

the stage of progress of the Work when the Work or designated portion thereof is sufficiently complete . . . so that the Owner can occupy or utilize the Work for its intended use; provided however, that as a condition precedent to Substantial Completion, the Owner has received all certificates of occupancy and any other permits, approvals, licenses, and other documents from any governmental authority having jurisdiction thereof necessary for the beneficial occupancy of the Project . . . .

(emphasis omitted). According to Section 9.8, when the contractor considers the work to be substantially complete, he or she "shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment." Upon receipt of that list, "the Architect will make an inspection to determine whether the Work . . . is substantially complete." When the Work is substantially complete, the Architect "will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion . . . ."

On May 30, 2007, the Metro Department of Codes and Building Safety issued a temporary use and occupancy certificate for the hotel. A portion of the hotel opened for business that same day, but some work was still being conducted. The Department of Codes approved the hotel for final use and occupancy on June 26, 2007. On October 22, 2007, one of LLW's employees sent Plaintiff an email stating that an "AIA Certificate of Substantial Completion" was attached. However, the certificate is not in the record. Plaintiff contends that the Certificate of Substantial Completion was not duly signed by an authorized representative of LLW until after October 22. LLW and Mr. Livingston dispute this contention. More importantly, when or whether a certificate was properly executed is not revealed by this record.

Subsequently, Plaintiff began experiencing cracking and "water infiltration" in the hotel's garage. On October 20, 2010, Plaintiff filed suit against LLW, Mr. Livingston, and others involved in the construction of the hotel.[2]

In October 2014, LLW and Mr. Livingston moved for summary judgment, arguing that Plaintiff's claims against them were time-barred by the three-year statute of limitations for injuries to real property. *See* Tenn. Code Ann. § 28-3-105. Plaintiff opposed the motion, arguing that its claims against LLW were timely because, according to the Architecture Agreement, causes of action between them did not accrue until LLW issued the Certificate of Substantial Completion on October 22, 2007. Plaintiff also argued that the accrual provision in the Architecture Agreement did not apply to the

---

[2] Plaintiff also sued the Reaves Firm, Inc. (the structural engineering firm LLW hired), David N. Fanning (the engineer who signed engineering drawings for the hotel), and LLW's plumbing consultants (Crabtree Engineering, Jeff Crabtree, Gookin & Associates, and Bobby Gookin). Of these defendants, only LLW and Mr. Livingston are participating in this appeal.

claims against Mr. Livingston because he signed the agreement only on behalf of LLW and was not a party to the contract.

After a hearing, the trial court granted summary judgment in favor of LLW and Mr. Livingston. The trial court found that the provisions of the Architecture Agreement applied to Mr. Livingston because all of the claims against him arose out of the duties he owed by providing services under the Architecture Agreement. The court also determined that the Certificate of Substantial Completion was not a requirement for establishing the date of Substantial Completion. According to the trial court:

> [L]ooking at the contractual provisions between the parties, the architect's certificate was not a requirement for the building in reaching its substantial completion. A substantial completion is a matter of fact, and there's a range of dates on which the substantial completion could be had, and most probability [sic], the correct date is June 1, 2007. . . . [T]he architect's certificate merely recognizes [the fact of substantial completion], it does not establish that fact.

Plaintiff filed a motion requesting that the trial court revise its order or grant Plaintiff permission to seek an interlocutory appeal. After another hearing, the trial court revised portions of its order and clarified that fraudulent concealment had not occurred because LLW and Mr. Livingston did not conceal the defects in the parking garage. However, the court did not change its decision that Plaintiff's claims against LLW and Mr. Livingston were time-barred. The trial court granted Plaintiff permission to file an interlocutory appeal, and Plaintiff filed a Tenn. R. App. P. 9 application with this court, which was granted.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A defense based on the statute of limitations is an affirmative defense. Tenn. R. Civ. P. 8.03. When defendants move for

summary judgment based on an affirmative defense, they must establish the elements of the affirmative defense before the burden shifts to the nonmovant. *See Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991) ("Since . . . a statute of limitations defense is an affirmative defense and no *prima facie* showing of the running of the statute of limitations is made by the record, the burden of establishing that the statute has run is upon the defendant."); *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) ("Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run. If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations.").

If the moving party makes a properly-supported motion, the burden shifts to the nonmoving party to "set forth specific facts *at the summary judgment stage* showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks omitted; emphasis in original). A disputed fact is "material" if it "must be decided in order to resolve the claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

Plaintiff contends, *inter alia*, that the trial court erred by holding that the date of Substantial Completion occurred before October 22, 2007, by ruling that the Architecture Agreement applied to Mr. Livingston individually, and by concluding that no fraudulent concealment occurred.[3] We have determined that LLW and Mr. Livingston were not entitled to summary judgment because they failed to establish that Plaintiff's causes of action accrued more than three years before Plaintiff filed this lawsuit. This

---

[3] The issues as identified by Plaintiff in its "Statement of Questions Presented for Review" read:

1. Whether the Trial Court erred in its contract interpretation and in its holding that the "date of Substantial Completion" occurred prior to October 22, 2007.
2. Whether the Trial Court erred in ruling that fraudulent concealment had not occurred when the defendant concealed its negligence.
3. Whether the Trial Court erred in holding that where individual professionals are sued in tort on claims of professional negligence, all of their duties flow from the terms of the contract entered into by their employer.
4. Whether the Trial Court erred in holding that the plaintiff bears the burden of disproving a defendant's affirmative defense raised in a motion for summary judgment.
5. Whether the Trial Court erred in weighing disputed facts on a motion for summary judgment in the movant's favor.
6. Whether the Trial Court erred in allowing a party to prevail on its motion for summary judgment when the party did not deny additional material facts with citations to the record.

determination precludes our consideration of the issues related to fraudulent concealment and the applicability of the Architecture Agreement to Mr. Livingston.

As previously stated, a party moving for summary judgment on the basis of an affirmative defense must establish the elements of that affirmative defense before the burden shifts to the nonmovant. *See Carr*, 815 S.W.2d at 532; *Campbell*, 238 F.3d at 775. The elements of a statute of limitations defense are: (1) the length of the limitations period; (2) the accrual of the cause of action; and (3) the applicability of any relevant tolling doctrines. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). In this case, the parties agree that Tenn. Code Ann. § 28-3-105, the three-year statute of limitations, controls. However, Plaintiff insists that LLW and Mr. Livingston failed to establish when the causes of action accrued.

Resolving this issue requires the court to interpret the Architecture Agreement. The interpretation of a contract is a question of law, which we review de novo. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The primary objective of contract interpretation is to ascertain and give effect to the intention of the parties. *See Allmand v. Pavletic,* 292 S.W.3d 618, 630 (Tenn. 2009). When ascertaining the intention of the parties, courts generally look to the plain and ordinary meaning of the words in a contract. *See id*. However, parties to a contract may agree to give specialized definitions to ordinary words and phrases. *See Seeley v. Pilot Fire & Cas. Co.*, 432 S.W.2d 58, 60 (Tenn. 1968) ("In seeking to find the intention of the parties to a contract, words in the contract, *unless otherwise defined*, will be given their usual and ordinary meaning." (emphasis added)), *overruled on other grounds by Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809, 812-15 (Tenn. 1996); *Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991) ("In determining the parties' intentions, the word or phrases contained in the instrument will be given the ordinary and usual meaning, *unless otherwise expressly provided . . . .*" (emphasis added)).

If contractual language is clear and unambiguous, then the literal meaning of the words controls. *Allmand*, 292 S.W.3d at 630. If the language is ambiguous—i.e., susceptible to more than one reasonable interpretation—the parties' intent cannot be determined by the literal meaning of the language, and this court must apply the established rules of construction to determine the intention of the parties. *Id.*

Here, although the parties have differing interpretations of the Architecture Agreement, no one has argued that the agreement is ambiguous. After conducting our own review of the agreement, we have concluded that the relevant provisions are not susceptible to more than one reasonable interpretation. As a result, we will interpret the Architecture Agreement based on the literal meaning of the language used in conjunction with the definitions that the parties agreed to.

The Architecture Agreement limits the time for bringing suit by setting the date on which causes of action accrue. Generally, contractual provisions that limit the time for bringing suit are valid, and no one has argued that the provision in this case is invalid.[4] *State v. Evans*, 334 S.W.2d 337, 342 (Tenn. Ct. App. 1959) ("We think it is a well established general rule that in the absence of a prohibitory statute, a contract provision is valid which limits the time for bringing suit, if a reasonable period of time is provided . . . ."). The accrual provision in the Architecture Agreement states:

> Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion. In no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed.

The text of this provision unambiguously establishes three possible accrual dates. First, causes of action pertaining to acts or failures to act that occur *before* "Substantial Completion" accrue not later than the "date of Substantial Completion." Second, causes of action pertaining to acts or failures to act that occur *after* "Substantial Completion" accrue not later than the "date of issuance of the final Certificate for Payment." Third,

---

[4] In a footnote to its principal brief, Plaintiff contends that this court could reverse the trial court because "the operation of [the accrual provision] violates the well-established principle in Tennessee that a cause of action cannot accrue prior to when a plaintiff discovers or should have discovered his injuries." In support of this contention, Plaintiff cites *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 489-90 (Tenn. 1975). *McCroskey* did not involve an accrual provision in a contract or state that parties cannot agree to establish a specific accrual date. Instead, the Supreme Court held that "in tort actions . . . the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Id.* at 491. Thus, *McCroskey* was an application of the discovery rule rather than a holding limiting the effectiveness of contractual accrual provisions. *See id.*; *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (stating the discovery rule as it exists in Tennessee). When it applies, the discovery rule governs the accrual of causes of action. *See Redwing*, 363 S.W.3d at 459. Here, however, Plaintiff and LLW intended to preclude the application of the discovery rule by entering a contract containing a provision that replaces the discovery rule with a different timeline for the accrual of causes of action. *See, e.g., 15th Place Condominium Ass'n v. S. Campus Dev. Team, LLC*, 14 N.E.3d 592, 598-99 (Ill. App. Ct. 2014) (interpreting a similar accrual provision and holding that it was "clearly intended to create an accrual date for all statutes of limitations in an effort to limit liability and eliminate the effect of the discovery rule."); *Gustine Uniontown Associates, Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 836 (Pa. Super. Ct. 2006) (similar accrual provision was intended to preclude application of the discovery rule). Because the parties contractually agreed to alter the discovery rule, arguments that the discovery rule should govern this case are not persuasive.

notwithstanding any other events, causes of action accrue on "the date when the Architect's services are substantially completed."

No evidence or argument has been presented about the "date of issuance of the final Certificate for Payment." Consequently, only two dates in the accrual provision are at issue here: "the date of Substantial Completion" and "the date when the Architect's services are substantially completed."

I. THE "DATE OF SUBSTANTIAL COMPLETION"

The Architecture Agreement requires the Architect to conduct inspections "to determine the date or dates of Substantial Completion . . . ." The Architecture Agreement also states that its terms "shall have the same meaning as those in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement." Document A201 contains definitions for "Substantial Completion" and for "date of Substantial Completion."

Document A201 defines "Substantial Completion" as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use . . . ." As a condition precedent to reaching this stage of construction, the Owner must have received all applicable governmental permits. Thus, it is possible to determine whether a project has reached "Substantial Completion" by examining the factual situation at the construction site and determining whether the Owner has received the applicable permits. An architect's certificate is not required to determine whether this stage of construction has occurred.

In contrast, the "date of Substantial Completion" is established by a certificate. According to Document A201, the "date of Substantial Completion is the date *certified by the Architect* in accordance with Section 9.8 [of Document A201]." (emphasis added). Under Section 9.8, when the contractor considers the work to be substantially complete, it must send the architect a list of items to be completed prior to final payment. In response, the architect "*will* make an inspection to determine whether the Work . . . is substantially complete." (emphasis added). If this inspection reveals any item that is not "sufficiently complete" in accordance with the contract, then the contractor must complete that item and submit another request for inspection to the architect. Subsequently, "[w]hen the Work . . . is substantially complete, the Architect *will* prepare a Certificate of Substantial Completion *which shall establish the date of Substantial Completion* . . . ." (emphasis added). After it has been prepared, "[t]he Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate." Thus, under the parties' contract, the "date of Substantial Completion" is established by the architect's certificate after the architect has determined that the work has reached the phase known as "Substantial Completion."

Here, it is undisputed that one of LLW's employees sent Plaintiff an email referencing a Certificate of Substantial Completion on October 22, 2007. However, the certificate itself is not in the record. Furthermore, as we noted earlier, Plaintiff insists the Certificate of Substantial Completion was not duly signed by an authorized representative of LLW until after October 22, and when or whether it was properly executed is not revealed by this record.

Nevertheless, LLW and Mr. Livingston contend that the date of Substantial Completion was June 1, 2007, based on a document titled "Change Order 10" and the testimony of Mike Modi, Plaintiff's president. Mr. Modi was questioned about Change Order 10 in a deposition, and he testified as follows:

Q. There's a line there [on Change Order 10] that states: "The date of substantial completion as of the date of this change order, therefore, is 6/1/2007"; is that right?

. . . .

A. Yes, sir.

Q. Okay. And that's consistent with your memory of when substantial completion was met for this project; is that right?

A. CO was partially granted -- I mean the certificate of occupancy was granted around that day.

Q. Okay. So you agree that the substantial completion date was June 1, 2007, as we saw in the prior email?

A. Yes, sir.

Contracting parties are free to agree that the occurrence of a certain event marks the date of substantial completion; however, when they do so other events will "lose their significance." *See Brookridge Apartments, Ltd. v. Universal Constructors, Inc.*, 844 S.W.2d 637, 640 (Tenn. Ct. App. 1992). For example, in *Brookridge*, the plaintiff entered two contracts, one with an architect and the other with a contractor, for the construction of an apartment complex. *Id.* at 638. The agreement between the plaintiff and the contractor stated that "the date of substantial completion shall be the date the HUD Representative signs the final HUD Representative's Trip Report provided that the trip report is subsequently endorsed by the Chief Architect." *Id.* (internal quotation marks omitted). The architect signed a Certificate of Substantial Completion on June 11, 1986, and the Metro Codes Department issued a final certificate of use and occupancy on

- 9 -

August 11, 1986. *Id.* at 639-40. However, the HUD Representative did not sign the final Trip Report until August 21, 1986. *Id.* at 639.

On August 13, 1990, a balcony at the apartment complex collapsed. *Id.* at 638. The plaintiff filed suit against both the architect and the contractor on August 20, 1990, less than four years after the HUD Representative signed the final Trip Report. *See id.* The defendants moved for summary judgment, arguing that the case was time-barred under the statute of repose, Tenn. Code Ann. § 28-3-202, because it was filed more than four years after the date of substantial completion. *Id.* at 640. The trial court granted the motion because "the apartment complex, as a whole, was ready for occupancy and use before August 20, 1986." *Id.* In so ruling, the trial court determined the date of substantial completion based on the approval of the final draw request and the issuance of a certificate of use and occupancy from the Metropolitan Department of Codes Administration. *Id.*

This court reversed the trial court's decision and ruled that the date of substantial completion did not occur until August 21, 1986, the date that the HUD Representative signed the final Trip Report. *Id.* at 641. According to this court, the parties

> established by written agreement that the date of substantial completion would be the date the HUD Representative signed the final HUD Representative's Trip Report. If the parties had not agreed to the date of substantial completion, then we agree that other events, such as the execution FHA Forms No. 2485 requesting permission to occupy living units of the project, the submission and approval of a final draw request evidencing completion of the project, and the issuance of a certificate of use and occupancy by the local government, would be relevant to the issue of whether substantial completion had occurred as defined by [Tenn. Code Ann. § 28-3-201]. *These events lose their significance, however, where the contractor and the owner have established the date of substantial completion by written agreement.*

*Id.* at 640 (emphasis added).

As discussed above, according to the Architecture Agreement, the parties agreed that the "date of Substantial Completion" is "the date certified by the Architect . . . ." The parties did not agree that the date of Substantial Completion would be the date listed in a change order or the date stated by Plaintiff's president. Consequently, based on the Architecture Agreement, Change Order 10 and Mr. Modi's deposition testimony cannot establish the date of Substantial Completion. *See id.* (other events "los[t] their

significance . . . where the contractor and the owner have established the date of substantial completion by written agreement.").[5]

Parties who move for summary judgment based on the statute of limitations have the burden of establishing the elements of that defense, including the accrual of the plaintiff's cause of action. *See Carr*, 815 S.W.2d at 532. The Architecture Agreement states that the Architect's certificate establishes the "date of Substantial Completion," which triggers the accrual of a cause of action. Because LLW and Mr. Livingston have failed to produce that certificate, it has failed to establish that Plaintiff's causes of action accrued under this part of the accrual provision.

## II. "DATE THE ARCHITECT'S SERVICES ARE SUBSTANTIALLY COMPLETED"

The final sentence of the accrual provision states that "*[i]n no event* shall such statutes of limitations commence to run any later than the date when *the Architect's services are substantially completed.*" (emphasis added). This sentence plainly means that, regardless of any other events, the relevant statutes of limitations begin to run when the Architect's services are substantially completed. Thus, even if no Certificate of Substantial Completion is available, the statute of limitations begins to run when the Architect's services are "substantially completed."

Neither the Architecture Agreement nor Document A201 provide a standard for determining when "the Architect's services are substantially completed" or a definition of "substantially completed." Consequently, we may look to the dictionary to ascertain the ordinary use of that term. *See Travelers Indem. Co. of Am. v. Moore & Associates, Inc.*, 216 S.W.3d 302, 308 (Tenn. 2007). The most relevant definition of "substantial" is "[c]onsiderable in importance, value, degree, amount, or extent." The American Heritage College Dictionary, 1354 (3d ed. 1997). Accordingly, the Architect's services are "substantially completed" when a considerable or significant part of its services have been finished even though some small tasks remain.

Under the Architecture Agreement, the Architect is required to perform several different types of services, including: design services, project administration services, contract administration services, and facility operation services. The accrual provision

---

[5] Unlike *Brookridge*, the case before us does not involve the statute of repose or the statutory definition of "Substantial completion", which accompanies the statute of repose and states that "the date of substantial completion may be established by written agreement between the contractor and the owner." Tenn. Code Ann. § 28-3-201(2). Although it specifically references "the contractor and the owner," this definition does not preclude other parties from establishing the date of substantial completion by written agreement. *See id*. Consequently, the underlying rationale of *Brookridge* is applicable to this case: parties are free to establish a specific definition of "the date of substantial completion," and when they do so other events "lose their significance . . . ." *See Brookridge*, 844 S.W.2d at 640.

does not distinguish between these services. Instead, the accrual provision refers to "the Architect's services . . . ." in general. Because the reference to services is general rather than limited, it is a reference to all of the services that LLW must provide under the Architecture Agreement. Therefore, in order to show that causes of action have accrued under this part of the accrual provision, Plaintiff must present evidence about the status of *all* of its services under the Architecture Agreement.

The record contains evidence about the progress of the hotel from which we might be able to make some inferences about the status of LLW's services. However, at the summary judgment stage we are required to consider the evidence in the light most favorable to the *non-moving* party and draw all reasonable inferences in that party's favor. *Godfrey*, 90 S.W.3d at 695.

LLW has provided evidence about the status of all of its services in the form of an affidavit from Mr. Livingston. That affidavit states in relevant part:

> 5. By September 18, 2006, LLW had substantially completed all services under the Architecture Agreement.
>
> 6. On September 18, 2006, LLW prepared and sent its last invoice for design services rendered to MR Hotels for the Project. . . .
>
> 7. After September 18, 2006, LLW did not perform any design services and only performed minor construction administration services under the Architecture Agreement.
>
> 8. On August 10, 2007, LLW prepared and sent its last invoice for any and all services performed under the Architecture Agreement. . . .

According to the affidavit, the services that LLW performed after September 18, 2006 were "minor construction administration services." The Architecture Agreement requires LLW to "conduct inspections to determine the date or dates of Substantial Completion." Because no one has provided any evidence that the hotel had reached Substantial Completion before September 18, 2006, it is reasonable to infer that one of the services that LLW provided after September 18, 2006 was to inspect the hotel in order to determine the date of Substantial Completion. Given that much of the litigation thus far has focused on the timing of Substantial Completion and the date of Substantial Completion, it is difficult to see how performing an inspection to determine the date of Substantial Completion is "minor."

As for August 10, 2007, LLW states that it issued its final invoice on that date and argues that its services were fully completed before that date. However, the issuance of a final invoice does not necessarily indicate that LLW's services were fully or substantially

completed. Indeed, LLW performed at least two services after it sent this invoice: LLW attempted to send a Certificate of Substantial Completion to Plaintiff in October 2007 and prepared and signed Change Order 10 on January 28, 2008. At the summary judgment stage, we cannot simply assume – to the moving party's benefit – that these two actions were minor or insubstantial services without any evidence. *See id.* Consequently, LLW has not established that its services were substantially completed more than three years before Plaintiff filed this lawsuit.

Based on the foregoing, LLW and Mr. Livingston failed to establish that this action was commenced more than three years after the claims accrued. *See Carr*, 815 S.W.2d at 532; *Campbell*, 238 F.3d at 775. Consequently, LLW and Mr. Livingston were not entitled to summary judgment on the basis of the statute of limitations.[6]

### IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against LLW and Mr. Livingston.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[6] Because our ruling is dispositive of this appeal, we render no opinion concerning the other issues.