FILED
United States Court of Appeals
Tenth Circuit

January 29, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DARREN ROBINSON,

      Plaintiff - Appellant,

v.

BNSF RAILWAY COMPANY,

      Defendant - Appellee.

No. 12-3292
(D.C. No. 2:11-CV-02464-JWL-KGS)
(D. Kan.)

ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **ANDERSON**, Circuit Judge, and **BRORBY**, Senior
Circuit Judge.

Darren Robinson filed this action against BNSF Railway Company (BNSF)

under the Federal Employers' Liability Act (FELA), seeking compensation for carpal

tunnel injuries he sustained while working for BNSF as a boilermaker. The district

court granted BNSF summary judgment, concluding that Mr. Robinson's claim is

barred by FELA's three-year statute of limitations. Exercising jurisdiction under

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

28 U.S.C. § 1291, and reviewing the district court's decision de novo, *United States v. Holmes*, 727 F.3d 1230, 1232 (10th Cir. 2013), we affirm.

**I.**

In late 2006, Mr. Robinson began experiencing pain, loss of grip, tingling, and numbness in his hands. He attributed those symptoms to his work for BNSF. *See* Aplt. App. at 35. When it worsened "to the point where it was hard to do [his] job," he decided he "needed to find out what was wrong." *Id.* at 38, 39. To that end, he sought treatment in November 2007 from Dr. Austria, his family physician. Dr. Austria's November 17, 2007, office-visit notes state that Mr. Robinson "came in complaining of pain around his wrist that radiates into the fingers and sometimes on his forearm. There is numbness and at times he feels he can't make a grip. His work requires hand repetitious [sic] movement." *Id.* at 42. Dr. Austria discussed with Mr. Robinson "the possibility" that he might have "carpal tunnel syndrome," *id.* at 43, and referred him to another physician for an electromyogram (EMG) of both hands. The EMG showed "no evidence of carpal tunnel syndrome." *Id.* at 47.

In January 2008, Mr. Robinson returned to Dr. Austria twice, voicing complaints similar to those he previously expressed. Notes from a January 18 office visit indicate that "as a boilermaker for BNSF" Mr. Robinson "does a lot of repetiti[ve] movements, pulling and twisting . . . with his hands." *Id.* Considering the EMG results and Mr. Robinson's persistent symptomatology, Dr. Austria ordered a magnetic resonance imaging (MRI) of Mr. Robinson's cervical spine to rule out

cervical disc disease as the "caus[e]" of his "symptoms." *Id.* The MRI results were normal, so Dr. Austria referred Mr. Robinson to Dr. Chawla, a neurologist, for another EMG and a second opinion.

In February 2008, Dr. Chawla examined Mr. Robinson. He described the history of Mr. Robinson's condition as follows:

> This 29 year-old gentleman has been complaining of problems with his hands for the last approximately one to two years. . . . He complains of a dull ache in his arms[,] . . . pain around his left thumb[,] . . . an aching pain in his forearm, more so on the left side. . . . The patient tells me he has had worsening . . . symptoms over the last one year. He did recently meet a rehab specialist who considered and discussed the possibility of carpal tunnel syndrome with him. This patient works as a boiler maker and has to do a lot of wrist work at his work place.

*Id.* at 49. Ultimately, Dr. Chawla sought to rule out carpal tunnel syndrome (CTS) and ordered an EMG. On February 14, he interpreted the EMG, noting that the "Neurophysiological findings [were] suggestive of a Bilateral Carpal Tunnel Syndrome. Right slightly worse than Left. Please correlate clinically." *Id.* at 52. "[S]uggestive of Bilateral Carpal Tunnel Syndrome," constitutes a "working diagnosis," which is a necessary prerequisite for a physical therapist to begin his or her treatment. *Id.* at 45-46 (testimony of Dr. Austria). On February 28, Mr. Robinson began six weeks of physical therapy, as prescribed by Dr. Chawla. When his condition did not improve, he returned to Dr. Chawla on August 25, 2008, at which time he now claims he was diagnosed with CTS and referred to a surgeon. Aplt. Opening Br. at 14-15 (alleging action was filed prior to "three year anniversary of the August 25, 2008 diagnosis"). *But see Robinson v. BNSF Ry. Co.*,

- 3 -

No. 11-2464-JWL, 2012 WL 4747155, at \*4 (D. Kan. Oct. 4, 2012) (addressing Mr. Robinson's argument that "he did not know about the existence or cause of his injury until September 2008," when a surgeon diagnosed him with CTS).

On August 17, 2011, Mr. Robinson filed this lawsuit. The district court concluded that he "knew or should have known no later than February 2008 that his employment with [BNSF] was a potential cause of his injuries." *Id.* at \*5. And, because he filed this lawsuit more than three years after February 2008, the court held it time-barred and granted BNSF summary judgment. This appeal followed.

## II.

"FELA permits railroad workers to recover for injuries caused by the negligence of their employers or fellow employees." *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001). "To maintain a claim under FELA, the plaintiff must allege and prove that the action was filed 'within three years from the day the cause of action accrued.'" *Id.* (quoting 45 U.S.C. § 56); *Rohner v. Union Pac. R.R. Co.*, 225 F.2d 272, 274 n.7 (10th Cir. 1955) ("[A] complainant under the Federal Employers' Liability Act must allege and prove the action has been instituted within the prescribed time."). "FELA does not define when a cause of action accrues . . . ." *Matson*, 240 F.3d at 1235. But when, as here, a plaintiff's injury is "latent" or "has an indefinite onset" we apply the "'discovery rule'" "[t]o avoid the harshness of . . . a strict limitations period that" could otherwise "require a plaintiff to file suit before a latent injury manifested itself." *Id.* "Under this rule, a federal

- 4 -

statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* (internal quotation marks omitted); *see also Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1268 (10th Cir. 2002) (observing that "the Supreme Court and federal appellate courts regularly apply the discovery rule" to lawsuits "brought under federal statutes" including "the FTCA," "RICO," and "FELA").

**A.**

Mr. Robinson first asserts that the district court erroneously granted BNSF summary judgment because FELA's "statute of limitations is an affirmative defense to be plead [sic] and proven by the defendant." Aplt. Opening Br. at 16. In support, he relies on state personal injury statutes and on the Sixth Circuit's observation in a FELA action that "Because the statute of limitations is an affirmative defense, the burden is on the *defendant* to show . . . [it] has run." *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) (emphasis added).

BNSF counters that Mr. Robinson waived his affirmative-defense argument by not raising it in the district court and that it is contrary to established precedent. In reply, Mr. Robinson asserts that he forfeited (rather than waived[1]) the argument, and

---

[1]    *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (explaining that "[u]nlike waived theories, we will entertain forfeited theories on appeal, but we will reverse . . . . on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result").

claims the district court committed plain error by requiring him to allege and prove he filed his FELA action within the applicable statute of limitations.[2]

But even if we found Mr. Robinson's affirmative-defense argument only forfeited and therefore reviewed it for plain error, he could not prevail. "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Richison*, 634 F.3d at 1128. "An error is plain if it is clear or obvious under current, well-settled law." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (internal quotation marks omitted). Here, we do not discern error—let alone clear or obvious error—on the part of the district court in, consistent with *Matson*, requiring Mr. Robinson to demonstrate he timely filed his FELA action. 240 F.3d at 1235.

"If a newly raised legal theory is entitled to appellate review at all—if it wasn't waived before the district court—it may form a basis for reversal only if the appellant can satisfy the [four] elements of the plain error standard of review." *Richison*, 634 F.3d at 1130. Mr. Robinson cannot demonstrate error. Indeed, even he acknowledges that this court places the burden on the plaintiff, and that the Sixth

---

[2] We need not decide whether Mr. Robinson waived or forfeited, *in this court*, his plain-error argument by raising it for the first time in his reply brief. *See United States v. MacKay*, 715 F.3d 807, 831-32 & n.17 (10th Cir. 2013) (declining to decide "at what point on appeal . . . an appellant [must] argue for plain error and its application" because appellant could not meet his burden of satisfying the four elements of the plain error standard of review), *petition for cert. filed*, 82 U.S.L.W. 3121 (U.S. Aug. 26, 2013) (No. 13-274).

Circuit's contrary observation in *Campbell*, 238 F.3d at 775, lacks accompanying "analysis," Aplt. Opening Br. at 12. Further, like this court, at least three of our sister circuits require the plaintiff in a FELA action to allege and prove his or her lawsuit was timely filed.[3]

**B.**

Next, Mr. Robinson takes issue with the district court's determination that his cause of action is time-barred, arguing that there exists a triable issue of fact concerning whether the first time he knew he had CTS was when Dr. Chawla "[c]onfirmed" the CTS diagnosis on August 25, 2008. Aplt. Opening Br. at 21. Mr. Robinson's argument is misplaced.

Accrual of a FELA claim does not depend on a formal medical diagnosis, *Albert v. Maine Cent. R.R. Co.*, 905 F.2d 541, 544 (1st Cir. 1990), *Townley v. Norfolk & W. Ry. Co.,* 887 F.2d 498, 501 (4th Cir. 1989), as Mr. Robinson apparently concedes, Aplt. Opening Br. at 23. Instead, this court deems a plaintiff "aware of" his or her "injury once he or she has been apprised of [its] general nature." *Gustavson v. United States*, 655 F.2d 1034, 1036 (10th Cir. 1981); *Matson*, 240 F.3d

---

[3]     *See Granfield v. CSX Transp., Inc*., 597 F.3d 474, 481 (1st Cir. 2010) (interpreting FELA's statute of limitations "to mean that plaintiff has the duty of alleging that he has brought his action in due time" (internal quotation marks omitted)); *Emmons v. S. Pac. Transp. Co.*, 701 F.2d 1112, 1118 (5th Cir. 1983) ("The burden is . . . on the claimant to allege and to prove that his cause of action was commenced within the three-year period."); *Carpenter v. Erie R. Co.*, 132 F.2d 362, 362 (3d Cir. 1942) (It is "incumbent upon one suing under [FELA] to allege and prove that his cause of action was brought within the time limit[]．").

at 1236 ("Rather than waiting for a physician's diagnosis, a plaintiff has an affirmative duty to investigate his injury and any suspect cause once he experiences symptoms." (internal quotation marks omitted)). And here, the uncontroverted evidence shows that by late February 2008 Mr. Robinson knew or should have known "of the existence and cause of [his] injur[ies]." *Matson*, 240 F.3d at 1235 (internal quotation marks omitted). By that time, he had (1) visited Dr. Austria on three occasions with hand, wrist, and arm complaints; (2) undergone two EMGs (one that showed no evidence of CTS and one that was suggestive of CTS); (3) undergone a MRI, which ruled out cervical disc disease as the cause of his symptoms; (4) reported to Dr. Chawla that he had recently met a rehab specialist who considered and discussed the possibility of CTS with him; (5) started a six-week course of physical therapy in an effort to alleviate his injuries' symptoms; and (6) in the context of assessing his injuries, informed Drs. Austria and Chawla that working as a boilermaker for BNSF required him to engage in repetitive hand/wrist movements. Further, as the district court aptly observed, "no evidence in the record reflects that anything other than plaintiff's work could have been the source of his injuries, regardless of whether those injuries were officially labeled" CTS. *Robinson*, 2012 WL 4747155, at *4.

In a related vein, we reject Mr. Robinson's argument that the district court erred by not applying the "negative diagnosis rule" to toll the limitations period until August 25, 2008. Neither of the non-FELA cases Mr. Robinson cites support his contention. Instead, those cases recognize that under Pennsylvania's discovery rule

- 8 -

the limitations period "'may be tolled where a doctor affirmatively tells a claimant that she does not have a certain disease and therefore that the defendant was not the cause of her injury.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 514 (3d Cir. 2006) (quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 132 (3d Cir. 2003)); *Debiec*, 352 F.3d at 132 ("[A] definitive negative diagnosis may be sufficient in some cases to overcome the fact that the claimant harbored suspicions that she had a particular injury."). In this case, although Mr. Robinson's initial EMG in 2007 did not show evidence of CTS, none of his medical providers ever definitively determined that he did not have CTS, such that a "negative diagnosis rule" might apply. In any event, we have held that Mr. Robinson knew or should have known of his injuries (and their cause) by late February 2008, and he does not point to any "negative diagnosis" after that time that could toll FELA's statute of limitations until August 25, 2008.

Finally, we reject Mr. Robinson's contention that the district court made an improper credibility determination regarding an alleged discrepancy between his October 2008 recorded statement to BNSF and his later deposition testimony. In the recorded statement, Mr. Robinson said that he had been diagnosed with CTS by Dr. Chawla in early 2008. *See* Aplt. App. at 39. The district court acknowledged that statement in its decision, and Mr. Robinson now contends that doing so was erroneous because he testified to the contrary in his deposition. We disagree. The deposition testimony at issue, that Mr. Robinson was unaware of the cause of his symptoms when he first noticed them, *see* Aplt. Opening Br. at 29 (citing Aplt. App.

at 158, 159, 162), is not contrary to his statement to BNSF about Dr. Chawla's early 2008 diagnosis; rather, the two statements have little to do with one another.  Thus, a credibility determination was not required and the district court did not err in observing that "plaintiff testified that Dr. Chawla diagnosed him with CTS 'in early '08' based on the results of the EMG . . . ."  *Robinson*, 2012 WL 4747155, at \*2.

### III.

The judgment of the district court is affirmed.

Entered for the Court

Wade Brorby
Senior Circuit Judge