[Cite as *Metz v. CSX Transp. Corp.*, 2022-Ohio-3503.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Jeffrey B. Metz

    Appellant

v.

CSX Transportation Corp, et al

    Appellees

Court of Appeals No.  L-21-1255

Trial Court No.  CI0202001484


**DECISION AND JUDGMENT**

Decided:  September 30, 2022

* * * * *

E.J. Leizerman, for Appellant.

Holly M. Olzarczuk-Smith, and David A. Damico, for Appellees.

* * * * *

**ZMUDA, J.**

## I.    Introduction

{¶ 1} Appellant, Jeffrey Metz, appeals the judgment of the Lucas County Court of Common Pleas, granting the motion for summary judgment filed by appellees, Consolidated Rail Corporation and Norfolk Southern Railway Corporation, and dismissing appellant's claims under Federal Employers' Liability Act ("FELA").

Because we find that the trial court properly concluded that appellant's claims are time-barred, we affirm.

### A.      Facts and Procedural Background

{¶ 2} This FELA action originated upon appellant's filing of a complaint on February 13, 2020.[1]  In his complaint, appellant alleged that he suffered serious respiratory and pulmonary injuries including asthma, emphysema, and chronic obstructive pulmonary disease ("COPD"), as a result of diesel exhaust exposure during the time of his employment with appellees.[2]  Appellant asserted that his injuries were the result of appellees' negligence and sought damages in an amount in excess of $3,000,000.  Relevant to this appeal, appellant further alleged that he "first learned of the medical condition referenced in [the] complaint within three years from the date of filing [the] complaint."

{¶ 3} On March 23, 2020, appellees filed their answer, in which they generally denied any liability arising out of appellant's respiratory and pulmonary conditions and asserted several affirmative defenses including a statute of limitations defense.  Following discovery and pretrial motion practice, appellees filed a motion for summary

---

[1] Appellant amended his complaint on May 7, 2020.  The amendments to the complaint are immaterial to the present appeal.
[2] Appellant also named CSX Transportation as a defendant in his complaint.  However, appellant filed a voluntary dismissal of CSX Transportation pursuant to Civ.R. 41(A)(1)(a) on August 24, 2021.  Therefore, CSX Transportation is not a party to this appeal.

2.

judgment on May 20, 2021. Several supporting materials were attached to appellees' motion for summary judgment, including transcripts from appellant's depositions, appellant's medical records, and filings contained in the record of appellant's bankruptcy proceedings.[3]

{¶ 4} In their motion for summary judgment, appellees argued that the FELA claims brought against them were time-barred because they were filed beyond the three-year statute of limitations set forth in 45 U.S.C. 56. Moreover, appellees contended that appellant's claims were barred by the doctrine of judicial estoppel in light of his recent bankruptcy. As to the statute of limitations issue, appellees noted that appellant has a "long history of breathing problems" dating back to the early 2000s, when he went to the hospital for breathing problems related to his exposure to diesel exhaust fumes at work. Thus, appellees reasoned that appellant "knew or should have known that his COPD and asthma might have been connected to his railroad employment more than three years before he filed his complaint on February 13, 2020."

---

[3] It appears from the record that several of these materials, including the deposition transcripts attached to appellees' motion, were not previously filed with the trial court, as required under Civ.R. 56(C). However, appellant did not object to the attachment of those materials to appellees' motion, and has thus waived any error associated with the trial court's consideration of the materials. *See XPX Armor & Equipment, Inc. v. SkyLIFE Co., Inc.*, 2020-Ohio-4498, 158 N.E.3d 1024, ¶ 87 (6th Dist.) ("Courts routinely find, however, that a party's failure to object to the use of an unfiled deposition transcript waives error as to the use of the excerpts of a deposition transcript.").

3.

{¶ 5} On July 1, 2021, appellant filed his memorandum in opposition to appellees' motion for summary judgment. In the memorandum, appellant acknowledged that a three-year statute of limitations is applicable in this case, but insisted that the statute did not begin running until he discovered the connection between his respiratory diseases and his employment. According to appellant, this discovery took place on January 15, 2020, the date his doctor, Dr. Daniel Pipoly, expressed an opinion that appellant's respiratory diseases were likely caused by his work on the railroad.

{¶ 6} Appellant argued his prior discussions with Dr. Pipoly did not trigger the statute of limitations, because in those discussion Dr. Pipoly "merely discussed the *possibility* that [appellant's] issues could be caused by the railroad." (Emphasis sic.). Appellant also argued that appellees' judicial estoppel argument was without merit, since he was unaware of the existence of a FELA claim prior to January 15, 2020, and thus could not disclose that potential claim in bankruptcy court prior to his bankruptcy discharge on December 19, 2019.

{¶ 7} Upon consideration of the parties' arguments, the trial court issued its decision on appellees' motion for summary judgment on November 30, 2021. In its decision, the trial court offered little analysis of its own, but agreed with the positions advanced by appellees' on both the statute of limitations issue and the judicial estoppel issue. Accordingly, the trial court granted appellees' motion for summary judgment.

{¶ 8} On December 20, 2021, appellant filed his timely notice of appeal.

4.

### B. Assignments of Error

{¶ 9} On appeal, appellant assigns the following error for our review:

I. The trial court erred in granting defendant Railroads' motion for summary judgment, dismissing plaintiff's claim under the Federal Employers Liability Act and Locomotive Inspection Act.

### II. Analysis

{¶ 10} In appellant's sole assignment of error, he contends that the trial court erred in granting appellees' motion for summary judgment.

{¶ 11} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 12} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). In doing so, the moving party must point to some evidence in the record in the form of "pleadings, depositions, answers to

5.

interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action[.]" Civ.R. 56(C); *Dresher* at 292-293. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293. The failure to satisfy this reciprocal burden warrants judgment against the nonmoving party. *Id.*

{¶ 13} Here, appellant argues that the trial court erred in granting summary judgment because his FELA claim is neither time-barred nor judicially estopped in light of his prior bankruptcy proceeding. In response, appellees argue the trial court properly concluded that appellant's claim is time-barred because it was filed outside of the applicable three-year statute of limitations. Further, appellees assert that appellant is judicially estopped from bringing his FELA claim in light of his failure to notify the bankruptcy court of the claim during the pendency of the bankruptcy action. Because we find the statute of limitations issue dispositive, we will constrain our analysis to that issue.

{¶ 14} The parties agree that appellant's claim arises under the FELA, Section 51 *et seq.*, Title 45, United States Code. "In 1906, Congress enacted the FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). To that end, 45 U.S.C. 51 provides that "[e]very common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for

6.

such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

{¶ 15} Nonetheless, in order to avail the remedies provided under the FELA, a plaintiff must commence an action asserting FELA claims "within three years from the day the cause of action accrued." 45 U.S.C. 56. In general, "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). The three-year statute of limitations set forth in 45 U.S.C. 56 constitutes substantive law, and thus governs this case. *See Erwin v. Bryan*, 125 Ohio St.3d 519, 2010-Ohio-2202, 929 N.E.2d 1019, ¶ 29 ("The existence and duration of a statute of limitations for a cause of action constitutes an issue of public policy for resolution by the legislative branch of government as a matter of substantive law.").

{¶ 16} The date of accrual of a FELA claim is governed by the so-called "discovery rule," under which the statute of limitations "begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Campbell v. Grand Trunk W. RR. Co.*, 238 F.3d 772, 775 (6th Cir.2001). The inquiry into whether a reasonable person should have known of the injury and cause is an objective one, and "the injured plaintiff need not be certain which cause, if many are possible, is the governing cause but only need know or have reason to know of a potential cause." *Fries v. Chicago & Northwestern Transportation Co.*, 909 F.2d 1092, 1095 (7th Cir.1990).

7.

{¶ 17} The parties agree that the three-year statute of limitations set forth in 45 U.S.C. 56 applies. However, they disagree as to when that three-year time period began to run. According to appellant, the statute did not begin to run until January 15, 2020, when Dr. Pipoly expressed an opinion that his respiratory diseases were *likely* caused by his railroad employment. By contrast, appellees urge that the statute started running when Dr. Pipoly told appellant "in 2008, 2009, 2010 and 2013 that his alleged exposure to diesel fumes at the railroad was possibly causing his COPD and asthma." According to appellees, these conversations with Dr. Pipoly alerted appellant to the connection between his respiratory diseases and his employment and thus triggered the statute of limitations under the discovery rule.

{¶ 18} In support of their motion for summary judgment, appellees cite to several supporting materials to demonstrate that a reasonable person in appellant's situation should have been aware of the causal connection between his work on the railroad and his asthma, emphysema, and COPD many years prior to commencing the present FELA action. In particular, appellees attached transcripts from appellant's two depositions, appellant's response to one of appellees' interrogatories, and appellant's medical records.

{¶ 19} In his first deposition, appellant recounted an incident that occurred in the early 2000s in which he was forced to stop working and admit himself into the Henry Ford Hospital in Detroit due to breathing problems. As to this incident, appellant testified that he "didn't make a connection early on" between his breathing difficulties and his exposure to diesel exhaust fumes.

8.

{¶ 20} In his second deposition, appellant stated that he was hospitalized for breathing issues in November 2020. After release from the hospital, appellant visited Dr. Pipoly. According to appellant, Dr. Pipoly "said at that point that he was convinced [appellant's breathing problem] was because of [appellant's] exposure to diesel exhaust." Appellant went on to reveal:

I know over the years I asked him if this might be a problem, you know, for me, you know, because of my employ. And he said he didn't have an opinion on it at that particular time. He – you know, the exhaust was ever present. It comes through the manifold, through the floor.

So he told me that type of exposure, because of the multiple environments I was in with the toxic dust and the exhaust, that I could – that it might possibly be – but in November, he said conclusively that it was the diesel exhaust that was causing, in his belief, causing my illnesses.

{¶ 21} Appellant acknowledged having had prior conversations with Dr. Pipoly regarding the connection between his respiratory diseases and his employment on the railroad, but he insisted that Dr. Pipoly "had no opinion."

{¶ 22} In an interrogatory propounded upon him by appellees in connection with this case, appellant was asked to identify the date on which he first knew that his injury was caused by exposure to diesel exhaust. He responded on August 26, 2020, that he "became aware that diesel exhaust has been causing this problem over the last couple of

9.

years." During appellant's second deposition, trial counsel for appellees questioned appellant about this response, as follows:

Q. Okay. Would that have been something that Dr. Pipoly had told you? Would that information have come from him?

A. No. I – I suspected it. I mean, like I said, I – it just wasn't coincidence that I kept getting sick at work. I mean, every time I would go – not every time, but a lot of times I would go and I would get sick with the same symptoms.

{¶ 23} Finally, appellees attached select portions of appellant's medical records related to his respiratory illness. The records include several progress notes from Dr. Pipoly.

{¶ 24} The first such note is dated November 29, 2005. According to the note, appellant visited Dr. Pipoly for a follow-up visit from a recent Toledo Hospital stay during which he first met with Dr. Pipoly. In the note, Dr. Pipoly indicated that appellant was a railroad worker and a cigarette smoker who suffered from "an exacerbation of asthma and COPD" that was undertreated at the time.

{¶ 25} In a subsequent progress note from March 9, 2006, Dr. Pipoly first suggested a connection between appellant's respiratory illness and his railroad employment. Dr. Pipoly assessed appellant as suffering from COPD and asthma and noted that it was "[i]mpossible to ascertain just how much chronic lung disease he might

10.

have from smoking as well as from diesel fume exposure as that which is intrinsic asthma. He has manifestations of both."

{¶ 26} Dr. Pipoly again surmised a connection between appellant's illness and his employment when he wrote the following progress note on May 14, 2008: "We also think some of [appellant's] COPD may be mediated by the heavy diesel fume exposures he has experienced on the railroad for years. This [is] because he has fixed air flow obstruction which seems disproportionate to a fairly limited smoking history of 20/pack year."

{¶ 27} Over time, Dr. Pipoly's statements regarding the cause of appellant's COPD became more definitive. On November 24, 2009, Dr. Pipoly reiterated his previous statement concerning causation in a progress note in which he explained that appellant presented with "chronic asthma and, we believe, some element of COPD related both to previous 20 pack year smoking and fumes and dust from working on the railroad." Then, on May 11, 2010, Dr. Pipoly stated: "Follow up with COPD on the basis of previous smoking, and I think more particularly heavy diesel fume exposure in his job on the railroad for which he is fully employed."

{¶ 28} The unrefuted evidentiary materials attached to appellees' motion for summary judgment and outlined above establish, at the very least, that appellant was made aware, no later than May 2010, of the possibility that his respiratory illnesses were caused by the diesel exhaust fumes he inhaled over many years as a railroad employee working for appellees.

11.

{¶ 29} Rather than contesting this proposition, appellant argues that the discovery rule is not triggered upon knowledge of a *possible* connection, but rather only upon a doctor's determination as to a *likely* connection. Appellant's argument misconstrues the essence of the discovery rule. As we already noted, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or in the exercise of due diligence should have known, of both the injury and its cause. *Campbell, supra,* 238 F.3d at 775. Further, a plaintiff need not be certain of the cause of an injury, but instead has an affirmative duty to diligently investigate the potential cause of an injury where many causes are possible. *Fries*, *supra*, 909 F.2d at 1095.

{¶ 30} Under appellant's articulation of the rule, the duty to exercise due diligence to ascertain the injury and its cause would be shifted from the plaintiff to a medical provider offering a medical diagnosis. It therefore misconstrues the obligation a party has to exercise some degree of diligence in making inquiry of the cause of medical symptoms. Here, there is no dispute that appellant had manifest symptoms for ten years prior to Dr. Pipoly's definitive diagnosis.

{¶ 31} In *Wells v. Norfolk Southern Railway Co.*, 108 F.3d 1378 (6th Cir.1997), the Sixth Circuit explained that the "'due diligence' requirement means that a plaintiff who has reason to suspect that his injury is work related must take steps to see whether this is, in fact, the case." *Id.* at *1; *see also Fries* at 1095 (explaining that the discovery rule does not "provide an escape for plaintiffs who are aware that some type of injury exists yet who choose to ignore it by failing to seek diagnosis and investigate the cause").

12.

In *McNutt v. CSX Transportation, Inc.*, W.D.Ky. No. 3:08-CV-601-H, 2010 WL 1688788 (Apr. 26, 2010), the United States District Court for the Western District of Kentucky applied the principle articulated by the court in *Wells* to a plaintiff's argument that his FELA claim was not time-barred because he had not received a medical diagnosis concerning the cause of his rotator cuff injury within a reasonable degree of medical certainty until 2008, five years after the condition was first diagnosed. The district court rejected the plaintiff's argument, stating:

> A medical diagnosis, however, is not required for a plaintiff to reasonably know that his injury is possibly related to his work. Rather, the plaintiff must exercise "due diligence" to learn the cause of his injury. * * * It is undisputed that Plaintiff knew of his injuries in 2003 and connected those injuries to his work. Thus, Plaintiff was under a duty at that time to investigate the cause of his injuries and the statute of limitations had begun running. Because Plaintiff failed to bring his claim within three years, his claim is now barred.

*Id.* at *2.

{¶ 32} Here, appellant had several discussions with Dr. Pipoly in 2008, 2009, and 2010, during which Dr. Pipoly connected appellant's respiratory illnesses to the diesel exhaust he was exposed to at work. By May 2010, Dr. Pipoly narrowed his opinion as to the cause of appellant's COPD down to appellant's "heavy diesel fume exposure in his job on the railroad for which he is fully employed." Thus, appellant knew or at the very

13.

least was made aware of the connection between his employment and his respiratory illnesses by May 2010 at the latest.

{¶ 33} With this information from his doctor, appellant had an affirmative duty to conduct further inquiry into whether his illnesses were, in fact, related to his work and commence his FELA action within three years. He could have "protect[ed] himself by seeking advice in the medical and legal community." *U.S. v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). However, appellant made no further inquiry and waited until February 13, 2020, nearly ten years later, to file his suit. Consequently, we conclude that appellant's complaint was filed long after the applicable three-year statute of limitations had expired. Thus, the trial court properly concluded that appellant's FELA claim was time-barred and rightly granted appellees' motion for summary judgment on that basis.

{¶ 34} Accordingly, appellant's sole assignment of error is not well-taken.

### III. Conclusion

{¶ 35} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See also 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.        _____
                                                JUDGE
Gene A. Zmuda, J.

                                        _____
Myron C. Duhart, P.J.                       JUDGE
CONCUR.

                                        _____
                                                JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.